## MOSELY *vs.* MOSELY.

While lapse of time between the occurrence of a ground for divorce and the application therefor may be considered by the jury, and if not satisfactorily explained may be good ground for refusing the divorce, yet the statute of limitations does not apply to bar such actions.

(*a*). Especially would the statute not apply to the ground of willful and continued desertion.

Husband and Wife.    Divorce.    Statute of Limitations. Before Judge PATE.    Montgomery Superior Court.    April Term, 1881.

Reported in the decision.

JOSEPHUS CAMP; GARRARD & MELDRIM, for plaintiff in error.

ROBERTS & DE LACY; J. M. STUBBS; D. B. CHENEY, for defendant.

SPEER, Justice.

Annie Mosely brought her libel for divorce against C. A. Mosely to the superior court of Montgomery county; alleging that on the 18th of October, 1849, the petitioner and Clement A. Mosely were married in due form of law;

That they lived together from the time of their marriage until within a few days of their separation, during which time they had born unto them four children.    She further alleges that her husband, forgetful of the duty and obligation due to petitioner, on or about the 9th day of May, 1855, did curse, abuse, and inhumanly treat your petitioner, and with force and arms drove her and her small and helpless children from his house, the youngest child being only six or seven months old, and the oldest seven years old.    That she has had the care and support of said children since the separation, and owing to her

poverty they have grown up in ignorance and idleness. She further alleges that about the time aforesaid the said Clement A. did willfully and without cause desert the petitioner about the 9th of May, 1855, and has continued said desertion ever since, and she says she has not associated or cohabited with her husband since the time of said desertion, 9th May, 1855. She further alleges that about the time aforesaid the said Clement A. did take into his house, and, in open violation of the law and his obligation to petitioner, commit the crime of adultery and fornication with one Mary McDaniel, a woman in disrepute."

Whereupon she brings her suit, etc.

To this libel of plaintiff, defendant by his counsel demurred, *ore tenus*, and for cause of demurrer said, "that the plaintiff's right of action for divorce and application for temporary alimony and counsel fees are barred by the statute of limitations." By consent of counsel and order in term the question of the demurrer to petitioner's libel was postponed to be heard in vacation by the judge.

On the hearing thereof the court overruled the demurrer and the defendant below excepted.

The question is thus presented, whether the statute of limitations is applicable to divorce suits under the laws of this state.

To determine this question it will be well to inquire into the early history of this character of proceeding, with a view of tracing the rules and practice that have obtained in the courts that took cognizance of such causes.

"In England 'all matrimonial causes' are heard in the ecclesiastical courts. These are the courts of the archbishop, bishop, and other functionaries of the church, by whom instead of the crown their judges are commissioned. Yet in effect it is from the same source as the lay tribunals, since the king is the head and supreme governor of the church. Matrimonial causes fell naturally within this jurisdiction of the spiritual courts, because marriage was then regarded as one of the sacraments of the church."

But these ecclesiastical courts of England are regular tribunals, proceeding under the authority of the crown and parliament, and hence it follows that the law administered in those courts is a part of the general law of the country, not technically indeed termed "the common law," but still a part of the law of the land, and is some-times denominated "a branch of the common law." Bishop on Marriage and Divorce, Sec. 1–9. In *Head vs. Head*, 2 *Kelly*, 191, this court held "until the adoption of the constitution of 1798 and the passage of the act of 1802, to carry into effect an article of that constitution on this subject," no court in Georgia had any authority to hear divorce cases—and that article limited the courts to grant-ing divorces upon "legal principles," which was construed to mean the law of the state at the adoption of the con-stitution. The court further held that as there had been no previous colonial or state legislation on the subject, that branch of the common law known as the "ecclesias-tical law" was then the law of this state, and so became by the force of the words of that constitution.

The jurisdiction and trial of divorce suits having been thus, as "ecclesiastical law," transplanted into our system of laws by the constitution of 1798, and the statute in pursuance thereof, we are to look to the rules and prac-tice of the ecclesiastical courts of England, in the absence of statutory regulation, for our guide, and precedents touching "matrimonial causes" in our courts of law. What was the rule, and so far as we have been able to discover, what continues to be the rule in the English ecclesiastical courts on the subject of lapse of time in divorce suits. Mr. Bishop in his admirable work on Mar-riage and Divorce, says: "A remaining defence in suits for divorce is the lapse of time since the offence complained of was committed. In England, however, there is no statute of *limitations* applicable to these suits, and the courts have never laid down any analagous rule; *mere de-lay is not therefore itself a bar*. Yet it may furnish strong evidence of a condonation or connivance," and it may

demand a full and satisfactory explanation of this delay to rebut this presumption. Bishop on M. and D., section 410 (second edition), and authorities there cited.

Where there has been such a delay as operates *prima facie* against a party he is at liberty to explain it. *Ib.*, 412. In the English practice the plaintiff sometimes introduces into his libel articles to account for his delay in instituting his suit, but it is not necessary to examine witnesses upon such articles unless the defence is such as to require him to justify his conduct. "It is true, that in some of the states there are statutes that, either expressly or by implication, limit the period within which after the discovery of the offence the suit must in all cases be brought. Such a statute operates as an absolute bar." 2 Barb. C. R. 309. In New York, the statute is fixed at five years, in New Hampshire, at eight and in other states they vary, but we can find no English case, from the ecclesiastical reports, nor has any been cited, showing this plea was sustained as a *bar to a hearing on the merits*, and as we have adopted the ecclesiastical law of England into our body of laws touching matrimonial causes, we adhere to its rules and precedents unless altered by statute.

But it is insisted most earnestly and ably by counsel for plaintiff in error, that in the year 1850 a statute was passed by the legislature changing the law, upon the subject of divorce and declaring and defining grounds upon which the same can be had, and that, as this right of action is now the creature of statute, the limitation laws apply to such suits. That if it be a statutory right the limitation is twenty years. If not, then it falls under the class of all other actions *ex contractu*, and the limitation is four years. See Code, §§2913 to 2925.

We cannot agree with counsel as to either of these limitations being applicable. Shall we place the marriage contract on the same plane as that of other contracts? It is true, in law-writings it is generally denominated a contract, but it is more than a contract, and differs from

all others. In the Roman Catholic Church, it is a sacrament and indissoluble during the lives of the parties. Protestant Churches regard it of Divine origin, and invest it with the sanction of religion. Lord Robinson, a distinguished Scotch judge, in a passage approvingly quoted by Judge Story, says " marriage is a contract *sui generis* and differing in some respects from all other contracts so that the rules of law which are applicable in *expounding and enforcing other contracts may not apply* to this. . It is the most important of all human transactions and the basis of the whole fabric of civilized society." It is co-eval with and essential to the existence of society. It cannot, like all other contracts, be dissolved by the mutual consent of the contracting parties. It may be entered into by persons who are not capable of forming any other lawful contract. It can be annulled by law, which no other contract can be, and its rights and relations are derived rather from the law relating to it than from the contract itself. In dissolving this contract by judicial procedure, we cannot conclude the legislature intended to class it with those other causes of action to which acts of limitation apply.

In other states, where common and ecclesiastical law prevailed, for this cause of action special statutes in bar were enacted, and until the law-making power here so enacts we do not feel authorized by implication to apply any limitation now in force to this character of suit.

But one ground of this libel is willful and continued desertion. Can lapse of time, unless prescribed by law, condone this violation of conjugal duty? Can a daily, monthly and yearly continuance of this breach of faith grow so old that it ceases to be a reproach? Shall it be said that an abandonment for three years is a cause of divorce, but a desertion of twenty years is a shield and protection from its consequences? Now we do not mean to say that, according to the English law, 'this long delay may not be a subject of inquiry by the court and jury on the trial, and

may not enter largely into the merits of the application, and may not even defeat it on a fair and full investigation, but we do hold that *mere lapse of time is not a bar to the suit*—does not prevent an investigation, but leaves it to the court and jury to determine on all the facts of the cause, including this lapse of time, the plaintiff's right to a divorce, giving, as they should do, due consideration to this long delay with such explanation as may be offered. If the interval between the offence, when known (such as adultery), and the bringing of the suit be very long, a court and jury should be indisposed to relieve a party who appears to have slumbered over it, unless some satisfactory reason be shown.

Our judgment, therefore, is that the demurrer to libellant's petition for a divorce was properly overruled, and we affirm the judgment of the court below.

Judgment affirmed.