ELBRIDGE TUFTS RESPONDENT, v. ELEANOR TUFTS, APPELLANT.

STATUTORY CONSTRUCTION.—REPEAL.—NO SAVING CLAUSE.—Where a statute of the year 1852 provided certain grounds for a divorce, and in 1887 another statute upon the same subject was passed, with the same provisions in many respects as the former statute, but without any clause saving causes of action under the first statute, and without any express clause taking away such cause of action; *held* that a right of divorce under the first act was not lost by the second act being passed.

STATUTE OF LIMITATIONS.—DIVORCE.—The general statute of limitations, which nowhere refers to actions for divorce, does not apply to such actions.

APPEAL from a judgment of dismissal upon demurrer of the district court of the third district. The opinion states the facts.

The grounds of divorce under the old statute of March 6, 1852, were the following: "Impotency of the defendant at the time of the marriage; adultery committed by the

defendant subsequent to the marriage; willful desertion of his wife by the defendant, or absenting himself without a reasonable cause for more than one year; habitual drunkenness of defendant subsequent to marriage; conviction of defendant for felony subsequent to marriage; inhuman treatment so as to endanger the life of the defendant's wife; when it shall be made to appear to the satisfaction and conviction of the court that the parties cannot live in peace and union together, and that their welfare requires a separation." A divorce could be granted the husband for any like cause.

The statute of February 2, 1887, specified as grounds for divorce, the following: (1) same as former statute; (2) same as the former statute; (3) willful desertion for more than one year; (4) willful neglect of husband to provide the wife the common necessaries of life; (5) habitual drunkenness; (6) conviction of felony; (7) cruel treatment to the extent of causing great bodily injury or great mental distress, and no other grounds were named.

The statute of limitations has the following general clause, section 3150, 2 Comp. Laws, 1888: "An action for relief, not hereinbefore provided for, must be commenced within four years after the cause of action shall have accrued."

*Mr. Arthur Brown,* for the appellant.

*Messrs. Powers and Hiles,* for the respondent.

MINER, J.:

The appellant in this case filed her complaint for divorce October 15, 1891, alleging, among other things, that she was married to the defendant in November, 1869, at Salt Lake City, where she had resided since that time; and that for several months following her said marriage she was required by the defendant to reside with his mother, and

that during such residence she was subject to, and made the victim of, repeated acts of extreme cruelty on the part of the defendant and his mother, which, if true, would ordinarily entitle her to a decree of divorce. These acts are sufficiently set out to cover the requirements of the statute. She further alleges that, on account of such several acts of cruelty, she was obliged to leave his mother's house, and return to her parents; that soon after this the parties obtained what was then called a "church divorce" from the Church of Jesus Christ of Latter Day Saints, which reads as follows:

"Know all men by these presents, that we, the undersigned, Elbridge Tufts and Eleanor B. Tufts, his wife (before marriage with him, Eleanor Bringhurst), do hereby mutually covenant, promise, and agree to dissolve all the relations which have heretofore existed between us as husband and wife, and keep ourselves separate and apart from each other from this time forth. In witness whereof we have hereto set our hands, in Salt Lake City, this 26th day of August, A. D. 1870.

ELBRIDGE TUFTS.<br>
ELEANOR B. TUFTS.

Signed in presence of D. McKENSIE, GEORGE REYNOLDS."

It also appears that at this time the appellant was of the age of twenty years, had no experience whatever in courts, and supposed that such document above recited was a valid divorce until before the commencement of this suit; that no other divorce had ever been granted; that several years after this, and while in the belief that she was legally divorced, she again married, one Wickel, but she ceased living with him after she discovered she was not legally married to him; that said defendant has twice married since her marriage with him, and has never obtained any legal divorce from plaintiff, etc. To this complaint the defendant filed his demurrer, on the grounds: (1) that said complaint does not state facts sufficient to constitute a cause of action; (2) that

it appears upon the face of the complaint that said cause of action there stated is barred by § 201 of the Code of Civil Procedure. This demurrer was sustained by the court, and the complaint dismissed. The plaintiff appeals from the order sustaining the demurrer and from the decree dismissing the complaint.

The first question here is, was the demurrer properly sustained? The learned counsel for the defendant now contend that the cause of action arose under the act of this Territory passed 1852 (see Comp. Laws Utah, 1876, p. 375), and that this statute was repealed by the act of 1887 (see Comp. Laws, 1888, § 2602), and that there was no saving clause to this act saving the right of action conferred by the act of 1852; and therefore the complaint does not state facts sufficient to constitute a cause of action. Section 2602 should not be so construed as to deprive any person of such rights as had accrued under the former act. This act prescribes a less degree of cruelty as a cause of divorce than was required under the former act, but in many respects its provisions are the same. *State* v. *Gumber,* 37 Wis. 303; 1 Bish. Mar., Div. & Sep. § 165; Bish. Writ. Laws, §§ 86, 123, 183; *Laude* v. *Railway,* 33 Wis. 640. In Pennsylvania it is held that before a statute should be construed to take away a remedy for a prior injury it should clearly appear that it embraces the cause of the injury within its provisions. *Chalker* v. *Ives,* 55 Pa. St. 81. In New York it has been held that positive enactments are not to be construed as interfering with previously existing rights of action, contracts or suits, unless the intent thus to interfere be expressed in the enactment. *Butler* v. *Palmer,* 1 Hill, 325; *Hitchcock* v. *Way,* 6 Adol. & E. 943; *Bedford* v. *Shilling,* 4 Serg. & R. 401. So, also, a statute prescribing causes for divorce, or taking away causes before existing, should be construed to apply only to acts

10

committed subsequent to its passage, unless a clear intent is expressed to the contrary. Bish. Mar. & Div. (3d Ed.) § 802; 1 Bish. Mar. & Div. (5th Ed.) §§ 98–103, 696; *Jarvis* v. *Jarvis*, 3 Edw. Ch. 462, 467; *Clark* v. *Clark*, 10 N. H. 380; *Given* v. *Marr*, 27 Me. 212; *Scott* v. *Scott*, 6 Ohio, 534. The rights and liabilities of these parties grew out of a contract governing the marriage relation which existed at the time the alleged cruelty was inflicted. These rights and liabilities were so sacred and binding between the parties that they could not be severed by mutual consent; nor could the parties forcibly break away from their binding force. Mr. Justice FIELD, in *Steamship Co.* v. *Jolliffe*, 2 Wall. 458, said: "When a right has arisen upon a contract, or a transaction in the nature of a contract, authorized by statute, and has been so far perfected that nothing remains to be done by the party asserting it, the repeal of the statute does not affect it, or any action for its enforcement. It has then become a vested right, which stands independent of the statute. * * * This new act took effect simultaneously with the repeal of the first act. Its provisions may, therefore, more properly be said to be substituted in the place of, and to continue in force with modifications, the provisions of the original act, rather than to have abrogated and annulled them." Bish. Writ. Laws, § 181, lays down the rule that "the repeal of a statute, accompanied by a re-enactment of its terms, or of its substantial provisions in any other form of expression, does not break its continuity, and there is no moment when, whatever words of repeal are employed, it can be said to be repealed." *Martindale* v. *Martindale*, 10 Ind. 566; *Fullerton* v. *Spring*, 3 Wis. 667; *Collins* v. *Warren*, 63 Tex. 314; *State* v. *Gumber*, 37 Wis. 298; Suth. St. Const. §§ 164, 165; *Middleton* v. *Railroad Co.*, 26 N. J. Eq. 269, 274. It is clear that the legislature did not intend, by repealing the act of 1852, to take away or impair the rights

which had arisen under it. *Steamship Co.* v. *Jolliffe,* 2 Wall. 450; *Wright* v. *Oakley,* 5 Metc. (Mass.) 406; *Randolph* v. *Larned,* 27 N. J. Eq. 557; Bish. Writ. Laws, § 183; *Milling Co.* v. *Riley,* 1 Or. 183; *Capron* v. *Strout,* 11 Nev. 304.

The complaint states facts sufficient to constitute a cause of action under the statute. The cause of action having accrued and become complete under the laws of 1852, we think it sufficient, unless barred by the statute of limitations. Section 3150, Comp. Laws 1888, is the general statute of limitations applicable to actions not otherwise specified. Actions for divorce are nowhere referred to in any provision of the limitation act. The question is therefore presented whether the general statute of limitations is applicable to action for divorce under the laws of this Territory. Bishop, in his work on Marriage, Divorce and Separation (volume 2, § 426), says "that the statutes of limitations, in the mere ordinary words common in our statutes, are not extended by interpretation to suits for divorce." But, where the statute by express terms limits the period within which a matrimonial suit must be brought, such statute operates absolutely. By the practice of the English parliament in granting divorce bills, delays in the preliminary steps and in the final application are taken into account; yet there, as in some of the states, where no express statutory bar is created, any reasonable explanation contained in the pleadings or the proofs excusing the delay is to be considered by a court of equity in granting or refusing relief. And lapse of time, when excused, is by no means treated as an absolute bar. In one case cited, poverty being the excuse for delay, the petitioner was granted relief, although 16 years had passed since the adultery was committed. So, also, absence abroad, sickness, and mistake of fact as to the relation existing between the parties, have been held sufficient to excuse the delay in presenting a complaint

for relief. Bish. Mar., Div. & Sep. §§ 428, 429; *Mosely*
v. *Mosely*, 67 Ga. 92. Mr. Justice SWAYNE, in *Sullivan*
v. *Railroad Co.*, 94 U. S. 807, says: "Every case is
governed chiefly by its own circumstances. Sometimes
the analogy of the statute of limitations is applied, some-
times a longer period than that prescribed by the statute
is required; in some cases a shorter is sufficient, and
sometimes the rule is applied where there is no statutory
bar. It is competent for a court to apply the inherent prin-
ciples of its own system of jurisprudence, and decide
accordingly." And "where the relief sought is based on
a right purely equitable, then that court acts solely upon
its own inherent rules, altogether outside of and independ-
ent of the statute of limitations." *Kline* v. *Vogel*, 90
Mo. 239, 2 S. W. Rep. 408; 13 Amer. & Eng. Enc.
Law, 675–679.

Taking the facts as presented in this case in connection
with the peculiar relations then existing between husband
and wife as recognized by the church of which these
parties were evidently members, we can come to no other
conclusion than that the delay on the part of the plaint-
iff in presenting her complaint should be recognized as
excusable. Indeed, delay in complaining of family diffi-
culties, and in bringing such matters before the court, is
to be encouraged, rather than punished, in the hope that
a better state of things may be established by the volun-
tary action of the parties. The marriage relation is a
continuing one. In legal contemplation, husband and
wife are one. In their dealings with each other they are
governed by the same rules that are applied to others.
Neither should be allowed to claim laches as to the other,
but the policy of the law should be to encourage tran-
quility and forbearance between parties sustaining that
relation. While the relation is based upon a contract,
yet it is a contract that differs from all others, and is
the basis of civilized society. It cannot, like other con-

tracts, be dissolved by mutual consent of the contracting parties. It may be entered into by parties not capable of forming any other lawful contract. It can be annulled, by law, and its rights and relations are derived rather from the law relating to ·it than from the contract itself. In dissolving this contract by judicial procedure, we cannot conclude the legislature intended to class it with other causes of actions to which acts of limitations apply. *Mosely* v. *Mosely*, 67 Ga. 92; *Johnson* v. *Johnson*, 50 Mich. 293, 15 N. W. Rep. 462. Our conclusion is that the statute of limitations is not a bar to this action. We do not mean to say that long unexplained delay in bringing this action may not be the subject of inquiry by the court at the hearing. This delay may defeat the action upon a full and fair investigation, if it is not satisfactorily explained. All the facts concerning the allegations in the complaint should be presented to the court, and from them the court can determine the rights of the parties. The several orders of the third district court in sustaining the demurrer and dismissing the complaint are vacated and set aside, with costs, the defendant to be allowed to answer, and the case proceed to a hearing upon the merits.

ANDERSON, J., and BLACKBURN, J., concurred.