## Pauline Brennan v. Electrical Installation Company.

### Gen. No. 11,925.

1. RIGHT OF ACTION—*when, cannot be denied by this State.* The legislature of this State cannot deny a right of action given by the laws of a sister State where at the time such right of action came into being, it was recognized by the laws of this State.

2. RETROACTIVE EFFECT—*when not given to statute.* No statute will be construed to operate retrospectively unless the intent that it shall do so is manifested by clear and unequivocal language. .

3. INJURIES ACT—*amendment to construed.* The amendment of 1903, providing that "no action shall be brought or prosecuted in this State to recover damages for a death occurring outside of this State," is not retrospective in its operation.

4. COMMON LAW—*presumption of identity in sister State.* The presumption is that the common law prevailing in a sister State is the same as the common law existing in Illinois; if the contrary is claimed, it must be clearly demonstrated.

5. MASTER—*when not obligated to protect servant.* If the master has neither created the danger, nor in the exercise of the care required of him has had knowledge or means of knowledge of its existence, then he is under no obligation to protect his servant therefrom.

6. RELEASE—*what does not operate as.* Neither the reception of money directly from one wrong-doer nor the securing thereof from the sale of a judgment against such wrong-doer, would, in the absence of a release or of an accord and satisfaction, discharge or release another joint wrong-doer, except *pro tanto.*

Action on the case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the October term, 1904. Reversed and remanded. Opinion filed May 1, 1905.

**Statement by the Court.** This appeal is by Pauline Brennan, a widow, who, as plaintiff in the court below, sued the Electrical Installation Company as defendant in an action on the case for causing the death of her husband, by which she was left with four minor children and without means of support. The cause was submitted to a jury, who found a verdict for the defendant, on which verdict, after a motion for a new trial had been made by appellant and overruled by the court, a judgment for costs was rendered against appellant. From this judgment an appeal

was taken and in this court it is assigned as error that the verdict was against the weight of the evidence, and that the court erred in giving each of the instructions given on behalf of the defendant, and in overruling the plaintiff's motion for a new trial. Other assignments of error are made, but these are all that are argued or relied on.

The suit was originally brought in the Superior Court on January 23, 1900, by Patrick H. O'Donnell, as administrator of the estate of James M. Brennan, and a declaration in one count filed. But on April 23, 1904, an order was entered by the Superior Court allowing plaintiff to amend all papers in the proceedings, by changing the party plaintiff from "Patrick H. O'Donnell, administrator of the estate of James M. Brennan" to "Pauline Brennan," and giving leave to plaintiff to file an amended declaration. Thereupon the declaration in five counts, on which the cause was tried, was filed. The first count of this amended declaration describing the plaintiff as the widow of James M. Brennan, who died intestate, alleges that the defendant, the Electrical Installation Company, was engaged as an independent contractor in wiring and rewiring a certain system of electric lighting in the city of Vicksburg, owned by the Vicksburg Electric Light Company, a Mississippi corporation. And that the deceased, James M. Brennan, was employed as a lineman by the said defendant, and on the 3rd day of July, 1899, while in the course of his employment, was at work on a pole situated in said city of Vicksburg, and was in the exercise of all due care for his own safety, but that he was carelessly and negligently permitted and ordered to remain upon said pole of the said Vicksburg Electric Light Company, which the defendant was rewiring, although there was among the wires a certain dangerous feed wire, which was uncovered, and of which the defendant knew or should have known, and that defendant ordered and permitted deceased to be upon the pole after six o'clock in the evening, although the defendant knew or should have known that the current was liable to be turned on at that time. Further alleges that the current was so

turned on and James M. Brennan was killed. And by reason thereof Pauline Brennan, the widow, brings her suit, by virtue of a certain statute of the State of Mississippi, being chapter 65 of the Session Laws of 1898, entitled, "An Act to amend Chap. 86 of the Act of 1896; being entitled 'An Act to amend Section 663 of the Annotated Code of 1892 as to actions for an injury causing death;'" which states that wherever the death of a person shall be caused by any real, wrongful or negligent act of omission or by unsafe machinery, ways or appliances, as would have entitled the person to sue if death had not ensued, that thereupon, if said deceased person shall have left a widow or children, or both, etc., the person causing the death shall be liable for the damages, and the action may be brought in the name of the widow, and the suit shall inure to the benefit of all parties concerned, and the jury shall take into consideration all damages of every kind to all parties interested in the suit, and such action shall be commenced within one year of the death.

Section 2 provides that the act shall apply to all personal injuries to servants or employees received in the service or business of the master where such injuries result in death.

Section 3 provides that the damages recovered shall not be subject to the payment of debts, and provides for their distribution among the parties interested.

The count further alleges and sets up another statute, found in chapter 87 of the Session Laws of 1896 of the State of Mississippi, which provides that every employee of a corporation shall have the same rights and remedies for an injury as are allowed to other persons not employed by the corporation where the injury results from the negligence of a superior agent or officer, and also where the injury results from negligence of a fellow-servant. Knowledge by an employee injured by reason of defective condition of any machinery, ways or appliances shall be no defense to an action for the injury; and where death ensues the action may be brought in the name of the widow, etc.

There is a further averment in the count that James M.

Brennan left surviving him the plaintiff as his widow, and four minor children, and that by reason of the death of her husband, the plaintiff is deprived of her means of support and damaged to the amount of $30,000.

The second count sets up the same statutes and alleges the negligence of the defendant in allowing, permitting and ordering Brennan to remain on said pole, although it knew the place was dangerous because of a dangerous live wire attached to the pole.

The third count alleges the negligence of the defendant in not notifying the Vicksburg Electric Light Company that Brennan was at work upon the pole.

The fourth count alleges that the defendant knew, or should have known, that a certain current of electricity was to be turned into a wire upon the pole where Brennan had been ordered by it to work, about six o'clock P. M., and that it became the duty of the defendant to keep Brennan informed as to the correct time, but that the foreman of the defendant company owned and used a watch which was too slow, wherefore, by reason of the defendant's negligence the said Brennan was killed.

The fifth count alleges the duty of the defendant to furnish good and competent servants in the work on which Brennan was engaged, and its negligence in employing an incompetent servant—one J. E. Bell, a foreman—by reason of which negligence Brennan was killed.

All the counts set forth the same statutes of Mississippi that the first count does.

A general demurrer to this amended declaration was filed, argued and overruled, and the defendant then pleaded the general issue. On the issues thus made up a trial on May 2, 1904, resulted in a verdict for the defendant.

DARROW, MASTERS & WILSON, for appellant; MURRAY F. SMITH and R. L. McLAURIN, of counsel.

O. W. DYNES, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

Counsel for appellant ask us to reverse the judgment and

remand this cause on account of "evidence improperly admitted," of "errors in the instructions," and of "the weight of the evidence."

The testimony is sharply conflicting, and we should not interfere with the verdict of the jury or the judgment on it, on account of their alleged inconsistency with the weight of the evidence, if we were satisfied that the trial of the question of fact before the jury was a fair one under correct rulings and instructions of the trial judge.

We do not purpose in this opinion to discuss the evidence. We have determined that for errors in the instructions, as hereinafter set out, the case must be remanded for a new trial, and the same questions of fact, under corrected instructions, will be again before a jury to answer. Under these circumstances, we desire to refrain, as far as possible, from a discussion of the merits of the cause.

There are, however, two questions of law raised by the appellee which deserve and must receive our attention before we pass to a discussion of the instructions, although, as indicated, we think that it is upon the error in these instructions that the case must finally turn.

In the first place, it is insisted by the appellee, that even if the law of Illinois, when the death of Brennan occurred, in July, 1899, and when this suit was begun, in January, 1900, recognized in his widow a cause and right of action for his death, because such right was given to her by the statutes of Mississippi, yet the act of May 13, 1903, entitled "An Act to amend Section 2 of an Act entitled 'An Act requiring compensation for causing death by wrongful act, neglect or default,' approved February 12, 1853," nullified (when it went into effect July 1, 1903) this cause or right of action—inasmuch as it had not previously matured into judgment.

Of course if this contention be well taken, it is immaterial whether or not the instructions were correct, for although there are no cross-errors assigned on the record, yet if the motion of defendant at the close of all the evidence to take the case from the jury, should, on the strength of

this contention, or on any other ground, have been granted, no error in favor of the defendant in the subsequent instructions could have been really injurious. The judgment actually rendered would be the only one proper or justifiable.

The Act of February 12, 1853, is a substantial copy of the English Statute of the ninth and tenth Victoria known as Lord Campbell's Act, and reads as follows:

"Section 1. Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who, or person or corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony."

"Section 2. Every such action shall be brought by and in the names of the personal representatives of such deceased person, and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death to the wife and next of kin of such deceased person, not exceeding the sum of five thousand dollars; provided, that every such action shall be commenced within two years after the death of such person."

The act of May 13, 1903, which went into effect on the first of July following, was as follows:

"Be it enacted, etc., that section two of an act entitled 'An Act requiring compensation for causing death by wrongful act, negligence or default' be amended to read as follows:

"Section Two. Every such action shall be brought by and in the names of the personal representatives of such deceased person, and the amount recovered in every such

action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injury resulting from such death to the wife and next of kin of such deceased person, not exceeding the sum of *Ten Thousand Dollars.* Provided: That every such action shall be commenced within *one* year after the death of such person; *Provided, further, that no action shall be brought or prosecuted in this State, to recover damages for a death occurring outside of this State, and that the increase from five thousand to ten thousand dollars in the amount hereby authorized to be recovered, shall apply only in cases when death hereafter occurs."*

The italics mark the changes and additions made in the law by this Act of 1903.

It is contended by the appellee that this Act of 1903, although without express words of repeal, repealed, so far as any right to recover for a death out of the State is concerned, the Act of 1853, because of "a clear repugnance between the two laws," and because the "later statute revises the whole subject of the former one, and was intended as a substitute for it." Effecting such a repeal, and making no exception of pending cases or previously acquired rights of action, the later statute or amendment must be held, it is insisted, to apply to and put an end to them— a conclusion strengthened by the language of the proviso, that no such suit as the present shall be brought or *prosecuted* in this State.

This proposition of the appellee is not without plausibility, but there is more than one reason for holding it unsound. The first is that in the language of appellee's brief, "The right she (appellant) seeks to enforce was not created or given by the 'repealed' statute, but was given by the laws of the State of Mississippi." Whether or not such a right "granted by other States and not granted by the laws of Illinois," can be denied by the Legislature of this State and the courts of this State forbidden to recog-

nize its existence as an enforceable liability, given by the law of the sister State where the death occurs, it is not necessary for us to decide. Without deciding that it can, we have no intention or disposition to imply that it cannot, as to all such deaths occurring after the passage of the denying act, but we are very clear that as to deaths which had occurred at the time of the passage of such act, such a denial would be impossible. The Supreme Court of Illinois has announced the rule, commending itself by analogy and right reason, that any right of action which has occurred under the statute of a sister State of the Union will be enforced by the courts of Illinois, unless against good morals, natural justice, or the general interest of the citizens of the State in which the action is brought. Chicago & E. I. R. R. Co. v. Rouse, 178 Ill. 132. In the case cited it applied this rule to an action brought for a death caused in Indiana, the liability for which would (on account of our doctrine of fellow-servants) not have attached to the defendant under the statutes and law of Illinois, but which did attach under the statutes of Indiana. In upholding the right of the plaintiff to sue, the Supreme Court of Illinois quoted with approbation the language of the Supreme Court of Minnesota in a similar case, to the effect that the authorities fail to justify the position that to sustain such a statutory action the law of the forum and the law of the place where the right of action accrued must concur in holding that the act done gives a right of action. Herrick v. Minneapolis & St. Louis R. R. Co., 31 Minn. 11.

It is apparent that in the case at bar the action is not brought under the statute of Illinois, but of Mississippi, otherwise the party plaintiff would have no standing. It does not need the amendment of the act of 1853 to defeat this action, if the right to bring it is to be considered "purely a creation of the '*Illinois*' statute."

But if it is conceded, as it must be, that it is the creation of the Mississippi statute, then under the authority above cited there was "*an accrued cause of action*" in *Illinois*, immediately on the death of the deceased. Such an ac-

crued cause of action, we think, created a vested right in the plaintiff in this cause.    Any legal or equitable title to the present or future enforcement of a demand is a vested right according to the declaration of our Supreme Court. Richardson v. Akin, 87 Ill. 138.    "There is a vested right in an accrued cause of action."    Lewis Sutherland on Statutory Construction, sec. 671, citing Norris v. Tripp, 111 Ia. 115; Tufts v. Tufts, 8 Utah, 142; Pinkun v. Eau Claire, 81 Wis. 301; Smith v. Louisville, etc., R. R. Co., 62 Mississippi, 510.

Appellee insists that the right was "inchoate," not "vested," because not in judgment, and cites Van Inwegen v. City of Chicago, 61 Ill. 31, where the court speaks of "inchoate rights," "rights not carried into judgment and so not executed," and afterwards apparently referring to the same class of "rights," describes them as "in their nature not vested, but remaining executory."    Appellee cites also County of Menard v. Kincaid, 71 Ill. 587.    But we think that these cases can be plainly distinguished from such a one as the present.    The County of Menard v. Kincaid simply decided that the repeal of a statute giving certain officials power to lay out roads, by certain proceedings annulled all "inchoate" proceedings in the matter of such a road, which were not concluded; and Van Inwegen v. The City of Chicago, was a case arising under the repeal of a revenue law requiring insurance companies to pay a percentage of gross receipts into the city treasury as a tax imposition.    The court held that a repeal of this law prevented the city from recovering in a suit afterward brought for a percentage of the receipts for a period before the law was repealed, saying:    "It is unnecessary to argue the proposition that this right to sue for the percentage was not such a right as in legal parlance is termed vested." The language in every case is to be construed with reference to the facts of that case, and we do not think that the Supreme Court meant in this Van Inwegen case to say or imply that no "right" to enforce a liability, even when the liability is the correlative of some consideration given

or injury suffered by the claimant, could be held "vested," until it was in judgment. Such a doctrine would admit the destruction of property rights under contracts equally with claims under torts.

If the right of the widow in this case was, under the law of Illinois, vested at the death of her husband in Mississippi, no subsequent legislation could take it away. Subsequent legislation might perhaps prevent, in the case of such deaths in the future, any right depending solely on the Mississippi statute from becoming a right which could be enforced in the State of Illinois, but it could not shut the courts of Illinois to a claimant to whom they were open when the legislation was enacted. "Vested rights cannot be destroyed, divested or impaired by direct legislation. Their protection is one of the primary purposes of government. They are secured by the bill of rights and the constitutional limitations upon the exercise of the sovereign powers." Lewis Sutherland on Statutory Construction, section 671, and cases there cited.

But there are other reasons for not holding the act of May 13, 1903, retroactive. There is a general rule that no statute will be construed to operate retrospectively unless the intent that it shall do so is manifested by clear and unequivocal language. Jimison v. Adams Co., 130 Ill. 558; Gage v. Nichols, 135 Ill. 128; People v. McClellan, 137 Ill. 352; Fisher v. Green, 142 Ill. 80; Voight v. Kersten, 164 Ill. 314; Moore v. Chicago Guaranty Fund Soc., 178 Ill. 202; *In re* Day, 181 Ill. 73; Richardson v. U. S. Mortgage & Trust Co., 194 Ill. 259.

Such language we do not find in this amendment. It does not purport, as claimed, to be a repealing act or a complete revision. Its principal objects seem to have been to increase the limit to damages allowed by the Illinois statute, and to shorten the time within which the actions could be brought. These were purely amendments; the further provision we are now discussing is new, neither amendatory of nor repealing any prior statutory provision, but introducing a hitherto unknown prohibition into the

law of Illinois.    Such a provision we do not consider retro-
spective in its operation.    We do not think the legislature
so intended it.

In our opinion, therefore, both the intention and the
power were lacking in the legislature to make this amend-
ment of May 13, 1903, applicable to the case at bar.    There
may be aptly applied to it the language of Judge Brown
in the Sixth Federal Circuit in Osborn v. City of Detroit,
32 Fed. Rep. 36 :  "Not only is there nothing in the act
indicating that its operation was intended to be retroactive,
but it was not even given immediate effect, as would al-
most certainly have been the case if it had been intended
to operate upon actions already commenced, or causes of
action theretofore accrued."

The second matter of law which appellee claims should
dispose of this case, arises on the doctrine of the negligence
of fellow-servants, as declared by the Supreme Court of the
State of Mississippi.

It is contended that under the undisputed evidence there
can be no doubt that Brennan and the defendant's em-
ployee Bell, by whose personal negligence it is charged
that the death occurred, were fellow-servants, as that term
is defined by the Mississippi court of last resort, and that
it is therefore a matter of law that there can be no recov-
ery in this case.    Both in Illinois and in Mississippi the
common law on this subject is supposed to govern except
where, in Mississippi, it has been changed by the constitu-
tion in relation to railroad employees.

In Illinois the common law has been declared to be
that " where a master confers authority upon one of his
employees to take charge and control of a certain class of
workmen in carrying on some particular branch of his busi-
ness, such employee, in governing and directing the move-
ments of the men under his charge, with respect to that
branch of his business, is the direct representative of the
master and not a mere fellow-servant, and all commands
given by him within the scope of his authority are, in law,
the commands of the master."    City of LaSalle v. Kostka,

190 Ill. 130.   It cannot be denied that there was evidence
in the present cause tending to establish such a condition
here, but it is contended that the Supreme Court of Missis-
sippi has repudiated this doctrine as a declaration of the
common law and established another as the true statement
of it.   Of course, all the presumptions with us are in favor
of the accuracy of the exposition of the common law by
the Supreme Court of Illinois.   If, therefore, the law of
Mississippi on this subject, where it is unaffected by stat-
ute, differs from the law of Illinois, it must logically be be-
cause the common law has there been incorrectly inter-
preted.   If this can be established it may follow that the
common law, as it prevails in Mississippi, is different
from the common law as it prevails in Illinois, but this
must be clearly demonstrated, or the contrary will be pre-
sumed.  Fortier v. The Pennsylvania Company, 18 Ill. App.
260.

The appellee introduced in evidence certain opinions of
the Supreme Court of Mississippi to establish its conten-
tion.   We have studied them very carefully, and we are not
satisfied that it is by them established that the language
we have quoted from the City of La Salle v. Kostka, *supra*,
is not the law of Mississippi.

It is undoubtedly true—these opinions show it—that in
Mississippi the courts have given a more comprehensive
effect to the "fellow-servant" doctrine than have some other
States.   Employees of the same master that in Illinois
would not be held fellow-servants, have been there so held,
but in N. O., J. & G. N. R. R. Co. v. Hughes, 49 Miss. 280,
which seems to be the leading case which the later ones
cited and introduced in evidence, follow and approve, the
court says (page 289):   " Nor would we undertake to say
in advance that there might not be officers clothed with
such special authority and filling such special relations to
the company as that the corporation should be esteemed
as present with them, commanding and acting so that it
may be made amenable to subordinate servants.   We throw
out the suggestion, but without committal one way or the

other, in order to prevent the views here expressed from being carried beyond the range of their fair applicability."

In Lagrone v. M. & O. R. R. Co., 67 Miss. 596, there is language which we find it not easy to reconcile with the Illinois construction of the common law, but so far as the case decides the facts before it (and this must be considered as the limit of its scope in indicating that Mississippi does not accept the Illinois construction), it does not contradict such construction. The negligence complained of was of one employe (of higher rank) who injured another by an inaccurate and careless blow of a hammer while both were engaged in straightening a bent fish-bar. The court says: "We might with safety and propriety decline to say more than that appellant's declaration shows by unequivocal statement that the injury complained of was the result of the negligence of the section master at a time when he was simply engaged in manual labor with appellant. Both were engaged at that time in the ordinary work of simple day laborers in track repairing. The appellant was holding and the section master was striking a bent fish-bar with a view to straightening it for its purposed use. It seems to us that this plain and brief recital by every rule of law is ample to demonstrate that appellant's injury was the effect produced by the negligent acts of a fellow-servant."

In the case at bar counsel for appellee says in his brief : "We feel that this question is one of law and not of fact. If it is one of law, the defendant is not liable. If one of fact, the jury has decided the question in the defendant's favor."

As we have indicated, we do not consider that the question involved is, under the evidence, one of law. It is one of fact, and it becomes therefore material for us to consider whether the verdict rendered by the jury was so rendered under accurate instructions from the court.

There is an argument made by appellant that improper evidence was admitted by the trial court of the proceedings in a certain suit brought by the appellant in the Circuit Court of Warren County, Mississippi, against the Vicksburg Railroad, Power & Manfg. Co., for this same death,

and of the result. But this can be sufficiently considered in connection with one of the instructions hereinafter discussed. The appellant requested five instructions, which were numbered from I to V, and given. They cover various phases of the case presented by the evidence, and although of course we are not called upon by any assignment of error here to pass on them, yet since the case will probably be retried, it is not improper for us to say that they seem to us to state the law accurately.

The appellee then requested twenty-three instructions, sixteen of which, numbered from VI to XXI, inclusive, were given, and the remaining seven, numbered from XXII to XXVIII inclusive, were refused.

It is not necessary for us to say anything of those refused, as there are no cross-errors assigned, and they are not really before us for consideration. Of the instructions from VI to XXI, there are seven which are not attacked in the argument of appellant. They are numbered IX, X, XII, XIII, XIV, XIX and XXI, and may also be dismissed from further consideration. We see no objection to them. Instruction XXI leaves to the jury the question of fact whether the injury to the deceased was caused solely by the negligent act of a fellow-servant, and taken in connection with instruction IV may be considered correctly to state the law concerning the doctrine of an injury from the negligent act of a fellow-servant, as we understand it to exist in Mississippi.

The instructions complained of are VI, VII, VIII, XI, XV, XVI, XVII, XVIII, XX.

Of these we think one at least—XVI—is fatally erroneous; and another—XV—so likely to have been misleading as to make it very doubtful whether the jury considered the matter of which it treats from a correct standpoint. Some of the others, if not all, are properly subject to criticism, to which we shall advert after discussing XVI and XV.

Instruction XVI is as follows:

" The court instructs the jury, as a matter of law, that

the defendant was not required to guard Brennan from dangers which the defendant did not create, or of the existence of which the defendant had no knowledge or means of knowledge in the exercise of ordinary care on its part."

This instruction might well be understood to tell the jury that they should find the defendant not guilty (a) if they found that the fatal current which killed Brennan was not of its creation, and they should likewise find it not guilty if (b) they found that it had in the exercise of ordinary care no knowledge or means of knowledge that that current would be turned on while deceased was on the pole. It is manifest that the first of these alternatives does not state the law. It is quite probable that the conjunction " *and* "—not " or " as it appears, nor " nor " as counsel for appellee suggest—was the word which the learned trial judge really meant to use to connect the two clauses of the instruction. If the defendant had neither created the danger nor, in the exercise of the care required of it, had any knowledge or means of knowledge of its existence, then the conclusion that it was not under obligation to protect Brennan from it would follow; but as it stands the instruction is plainly bad. And we think, moreover, that to avoid misleading the jury, it would have been better—even had the instruction taken on otherwise the proper form—for the court to have indicated in it that the care required was to be measured by the usual and known risks of the employment. For the error contained in this instruction the judgment should, in our opinion, be reversed and the cause remanded for a new trial, We are of opinion that in a case of such conflicting testimony it is an error which cannot be overlooked.

Instruction XV is as follows:

"The court instructs you that if you believe from the evidence in this case the plaintiff has been fully compensated for the death of James Brennan, then you are not at liberty to assess further damages against the defendant in this case."

Counsel for appellant contends that this instruction was

erroneous as having no foundation of any kind in the evidence.   They also contend that the evidence of the verdict and judgment in favor of the plaintiff against the Vicksburg Railroad, Power & Manufacturing Company for $16,480, in the Circuit Court of Warren County, Mississippi, and of the execution issued upon said judgment, should have been excluded, although connected with testimony showing a sale of the said judgment by the plaintiff to one H. K. Johnson, of Vicksburg, for $3,500.   As we understand their argument, they deny that this judgment and its sale and the reception by Mrs. Brennan of $3,500 from such sale can properly have any effect whatever on the verdict of the jury in the case at bar.   To this proposition we cannot agree.   We think that these matters may be proven and that the reception of the $3,500 on the sale of the judgment can be properly considered by the jury on the question of damages.

The plaintiff's claim arises under the statute of Mississippi, not under that of Illinois, as has been indicated.   The limit provided for in the statute of Illinois does not apply.   But the action being for the "damages of every kind to the decedent and all damages of every kind to all parties interested in the suit" (such persons being the widow and the four children mentioned in the declaration), it is, in our opinion, proper and relevant for the defendant to prove all "compensation" which has actually been received from any person, if such there be, jointly a wrong-doer with itself (it should be held itself to be a wrong-doer), in reduction of the damages for which it might otherwise be deemed liable.   We think, moreover, that although neither the reception of such money directly from the other wrong-doer, nor the securing from the sale of a judgment claim against such other wrong-doer to a third person, a portion of the amount of such judgment, would, in the absence of a release or of an accord and satisfaction to or with such other wrong-doer, discharge or release the defendant except *pro tanto;* yet such a sale and the proceeds of it to the plaintiff, equally with such direct reception, can be properly put in evidence to effect such a reduction of damages.

It is certain that the legislature of Mississippi in the statute in question did not contemplate that the widow and next of kin should be more than once compensated in damages for the injury caused them by the death, and it is equally certain that it was purely on account of the death of her husband and through the means of a judgment obtained under the statute against a person adjudged either solely or jointly liable for it, that such money has been secured by the plaintiff as was paid to her by Harry Keen Johnson.

We think it consistent with justice and right reason, and in accord with the decisions of our Supreme Court, that the evidence complained of should have been admitted and a proper instruction on the subject given.   City of Chicago v. Babcock, 143 Ill. 358; Wagner v. Union Stock Yards & Transit Co., 41 Ill. App. 408; City of Roodhouse v. Christian, 158 Ill. 137; West Chicago St. R. R. Co. v. Piper, 165 Ill. 325.

But this instruction under discussion is open to grave objections.   Carefully analyzed and all intendments made in its favor, it may be that the instruction does not state an incorrect rule.   There is nothing in the evidence from which the jury could find that the plaintiff had been " compensated for the death of James Brennan," except the judgment against the Vicksburg Company and its sale, and if the proceeds of these did amount to the full damages which the jury believed from the evidence the plaintiff, suing as she did for the benefit of herself and her children, was in that capacity entitled to receive, then the jury should not have allowed her to recover anything more, if they also believed from the evidence that the Vicksburg Company was jointly with the defendant responsible for the death of her husband.

But in our opinion an instruction on this subject, in order not to be misleading, should be much more definite and precise in its language and in its application to the facts of this case.   It should include, in some form, the proposition that while such proceeds of the Vicksburg judgment as the

plaintiff had received could be considered in reduction of damages, it did not follow that the defendant had been released or discharged from all liability—if such liability existed—and it should more clearly include this material factor of the correct doctrine in relation to the matter, namely, that the condition of giving the money obtained by the plaintiff by means of the Vicksburg judgment the effect of reducing damages in this case, was a contemporaneous finding that the Vicksburg Company and the defendant were joint tort-feasors. It is apparent that a mere gratuity or benevolence from an innocent party would not be " compensation."

It is not necessary for us to discuss the other instructions attacked in detail. It is unlikely that they will be offered in their present form at another trial. The criticism, in our view, which may be justly made of them is not, as appellant urges, that , there is no evidence on which to base any theory of assumed risk or contributory negligence to be submitted to the jury, but that they might have tended to mislead the jury by ignoring the theory of plaintiff, which there was also evidence tending to sustain, that the deceased was acting under specific orders from the defendant by its vice principal to do the specific work at the particular place and at the particular time which was dangerous, and that therefore he could not be held to have assumed the risk unless the danger was so apparent that a person of ordinary prudence would have refused to obey the orders.

The same fault in this regard is chargeable to instructions VI, VII, VIII, XI, XVII and XVIII.

Instruction XX is criticised by appellant as practically condemned by the Supreme Court in Illinois Steel Co. v. McFadden, 196 Ill. 344. It bears a close resemblance to an instruction held to have been properly refused in that case, and should be modified if offered again, but we should not regard it as containing reversible error by itself.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*