Leona B. RIDGLEY, Plaintiff-Respondent,

v.

Elmer E. RIDGLEY, Defendant-Appellant.

No. 31405.

St. Louis Court of Appeals.

Missouri.

Sept. 17, 1963.

Hale W. Brown, Kirkwood, for defendant-appellant.

Noel F. Delporte, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

Defendant appeals from a judgment and decree awarding plaintiff a divorce, alimony in gross of $4,500, and $650 for attorney's fees.

Plaintiff alleged two grounds in her petition, indignities and desertion. In his first amended answer defendant admitted the marriage and separation, denied the averments concerning the grounds for divorce, and as an affirmative defense pleaded that all the indignities of which plaintiff com-

plained, if they occurred, which defendant denied, had occurred more than five or ten years before plaintiff filed her petition and were therefore barred by the statute of limitations. Plaintiff replied, denying the allegations constituting the affirmative defense.

The record reveals that the parties were married on September 8, 1920, and that five children were born of their union, all of whom were of age in 1958 when plaintiff filed her action. For the first few years following their marriage the parties lived on a farm in St. Louis County which defendant rented from his mother, but in 1929 they purchased from plaintiff's brother, for $2,000, a tract of about two acres on Wild Horse Creek Road in the same county. The title thereto was taken in both names as an estate by the entirety. No part of the purchase price was paid at that time, and in lieu thereof notes and two deeds of trust for the full amount were given to the seller. In fact, all that was ever paid thereafter by either party was $800 realized, "* * * when the road went through there * * *." Also in 1929 the plaintiff inherited 22.65 acres of bottom land from her family. The exact location of this acreage was not given, but the evidence indicates that it was probably in the neighborhood of the two acre tract. The following year, in 1930, the parties moved into an old, five room house located on the smaller parcel.

The evidence further shows that in the years which followed this move the defendant neglected his family, and spent an increasing number of the daylight hours, as well as most of his nights, whiling away his time at a tavern or store talking to the boys (as he expressed it), playing cards, and shooting pool. While ostensibly engaged in farming the 22.65 acres, and in raising stock (on pasture furnished rent free by plaintiff's family), and although able to work, the defendant performed less and less of the labor required, either leaving the necessary tasks to be performed by the parties' older sons, or letting them remain undone. The result was that the farm produced little in the way of crops, and defendant contributed no money towards the support of plaintiff and their children. The evidence further shows that for a considerable number of years before their separation the entire burden of supporting the family was thereby cast on plaintiff and the two older boys, and that by dint of hard work, aided by gifts of food from plaintiff's sister, they managed to eke out a meager living. There was also evidence of physical violence sustained by plaintiff at defendant's hands, of threats made by him to cut her throat with a razor and to strike her with a hammer, and of an attempt by defendant to obtain possession of checks mailed to plaintiff in payment of cream sold by her, which was a major source of her slender and inadequate income.

It is apparent from the record that defendant's misconduct, his lack of industry, and his neglect of and failure to support his family cast a heavy and abnormal burden on plaintiff, and eventually led to an estrangement. Plaintiff testified that defendant voluntarily stopped having marital relations with her, which defendant did not dispute. Both parties related that for some time before the separation occurred defendant ceased sharing their bedroom, and slept in the room occupied by their sons. Plaintiff stated, and defendant did not deny, that the arrangement was defendant's idea. Defendant testified that for almost a year before he left home plaintiff refused to cook meals for him, to make his bed, or to launder his clothes. Plaintiff admitted on cross-examination that she had not performed such tasks for the five or six months before defendant's departure, her explanation being that she was overworked and worn out from her efforts to perform her household tasks and also support her family, and that defendant's conduct caused her to reach the point where, "* * * I couldn't take it any longer. * * *"

Shortly before defendant left home he finally sought and obtained employment, at the TNT plant, but even after that he failed to contribute anything to the support of plaintiff or his family. About the middle of December, 1941, defendant stayed out all night, returned about one o'clock of the following afternoon, packed his belongings, and departed from the family home, never to return. At that time Jordan, the oldest child, was 20, Glenn was 16 or 17; the two daughters were 11 and 9; and Donnie, the youngest son, was 7. During the years which followed the defendant, by his own admission and though gainfully employed until 1959 or 1960, never contributed a cent to the support of his wife or his children. When asked by his own counsel as to how he figured they were going to get by, his explanation was: "They had the income off the 22.65 acres in the bottom, the income off the property where they lived. They didn't have to pay nothing but the light and tax bill. They raised chickens, had the pasture down below that they run cattle in, they sold milk, eggs, chickens and everything else."

■■ Defendant first contends that the court erred in awarding plaintiff a divorce on either of the grounds alleged in her petition. As we read his brief, he appears to argue, as to the grounds of indignities, that plaintiff was not an innocent party because she admittedly refused to cook for defendant or otherwise take care of his wants for a period immediately before the separation. It is crystal clear from the evidence that plaintiff patiently endured defendant's mistreatment, shiftlessness and neglect for years; that she was overburdened with the cares and responsibilities which were cast on her by defendant's failure and refusal to perform the normal duties of a husband and father; that eventually (and not surprisingly), her forbearance and endurance of defendant's mistreatment of her came to an end; and that her conduct and feelings toward plaintiff were induced and provoked by his derelictions and delinquencies. The law is not so unreasonable as to demand of an injured and long-suffering wife the patience of a Job, nor does the requirement of innocence contemplate proof of such exemplary and angelic perfection as to exclude any misconduct or unwise acts; all that she need show is that she has not been guilty of conduct constituting a ground or grounds for divorce. Simon v. Simon, Mo., 248 S.W.2d 560; L—— v. N——, Mo.App., 326 S.W.2d 751. Plaintiff sustained that burden. We find no merit in defendant's argument.

■■ On cross-examination, immediately after testifying that she was worn-out from her efforts and had reached the point where " * * * I couldn't take it any longer * * *," plaintiff was asked whether it was her desire that defendant leave home. She replied that she hadn't cared one way or another, that defendant had been " * * * no pleasure"; and that she had once told defendant that if he " * * * didn't start paying us some money he could get up and go, and he took off as soon as he started making money at the TNT." Defendant seizes upon these answers and argues that they show that plaintiff consented to the separation. As to plaintiff's testimony that she didn't care, there is nothing to indicate that she communicated her feeling to defendant at the time he left. Any undisclosed emotional reaction which she may have experienced, resulting from defendant's intolerable treatment of her, did not constitute consent or acquiescence to the separation. Redford v. Redford, 162 Mo.App. 127, 144 S.W. 125. Her statement to him that if he did not start contributing to plaintiff's support and that of their children he could leave was obviously made some time before he left. Considered in the light of plaintiff's preceding testimony that her situation had become unendurable, we regard her remark as a protest against defendant's failure to fulfill his duties, not as a consent to his subsequent abandonment of plaintiff.

Defendant next contends that in the light of defendant's ability to pay, and in

the absence of any evidence as to plaintiff's needs or resources, the court erred in ordering defendant to pay plaintiff the sum of $4,500 as alimony in gross. According to the uncontradicted evidence, his only income was his Social Security benefit of $92 a month and what he could earn doing odd jobs. At the time of the trial his total assets amounted to approximately $6,500, consisting of his one-half interest as a tenant in common in the two acre tract (if and when the divorce became final), worth at most $5,000; his automobile, which he valued at different times at $700 or $800, and $1500; about $12 in cash; and a life insurance policy with a face value of $2,000, the cash surrender value of which does not appear in the evidence. On the other hand, as the defendant points out, there is an almost total lack of evidence concerning plaintiff's circumstances. No testimony as to her age was given, though we may infer that she was no longer in the bloom of youth since the parties were married in 1920 and the trial occurred in 1962. But more importantly, there was no evidence introduced as to her present income, her current need for support, the state of her health, or the extent and value of her own means. All that can be gleaned by an exhaustive search of the record is that she is living in the home on the two acre tract and that she owns in her own name the 22.65 acres of bottom land she inherited in 1929, but neither the exact location nor the approximate value of that property was given. In addition, if and when the divorce becomes final she will also own, as will defendant, an undivided one-half interest in the two acre tract, worth $5,000.

Our statute on divorce, Section 452.070, RSMo 1959, V.A.M.S., provides:

"When a divorce shall be adjudged, the court shall make such order touching the alimony and maintenance of the wife * * * as, from the circumstances of the parties and the nature of the case, shall be reasonable * * *."

In construing this statute the Supreme Court has said that under the laws of this state marriage is a contract, not a sacrament; that the marriage contract obligates the husband to support his wife as long as they shall live; but that by a decree of absolute divorce the marriage is dissolved and both parties are released and discharged from the mutual obligations imposed by the marriage—including that of the erring husband to support his aggrieved wife. Nelson v. Nelson, 282 Mo. 412, 221 S.W. 1066; Smith v. Smith, 350 Mo. 104, 164 S.W.2d 921. In Nelson v. Nelson, supra, l. c. 1069, it was said that the permanent alimony allowed the wife by Section 452.070, " * * * is the allowance of such a sum of money in gross or in installments as will fairly and reasonably compensate her for the loss of her support by the annulment of the marriage contract * * * " and that " * * * In this limited sense at least it may be deemed an assessment of damages in her favor for breach of the contract by the husband. * * * " But in the subsequent case of Smith v. Smith, supra, l. c. 923, the basis of an award was put on the broader sociological ground that, " * * * in the interest of social welfare and justice the law has created a purely statutory liability incidental to divorce. Such is the alimony of today. When a divorce is decreed because of the husband's fault the statutes authorize the court to impose liability on the husband, if it would be reasonable to do so, for the future maintenance of the wife. * * * "

 It has long been the law of this state that Section 452.070 does not place a mandatory duty upon the court to award alimony to a prevailing wife, but leaves that issue to his discretion. Smith v. Smith, supra; Knebel v. Knebel, Mo. App., 189 S.W.2d 464. In determining whether alimony should be awarded, and if so, in what amount, numerous factors almost invariably enter into consideration, such as the financial status of the respective parties, including the character and

extent of their individual estates; their incomes, obligations, and necessities; the contributions of each to the property accumulated during the marriage; the probable future prospects of each; their respective ages, health, and ability to engage in gainful occupations; their children, if any, and the disposition made with respect to their custody; the duration of the marriage, and whether it was one of affection or convenience; and the conduct of the parties, with particular regard to the cause of the divorce, and the relative or comparative responsibility of each therefor. Simon v. Simon, Mo., 248 S.W.2d 560; Carr v. Carr, Mo., 232 S.W.2d 488; Knebel v. Knebel, supra. A wide latitude of discretion must of necessity be accorded the trial court in deciding the issues, but such discretion must be exercised with reference to established principles and upon a consideration of all of the circumstances of the particular case. Simon v. Simon, supra; Carr v. Carr, supra. In the instant case it is obvious that the court could not have considered *all* of the facts and circumstances, nor may we, for there is no evidence in the record as to plaintiff's financial condition or the value of her individual estate; her income, obligations and needs; her exact age; or the condition of her health. In this state of the record we have no alternative but to hold that the award of alimony was improperly made and amounted to an abuse of judicial discretion. Simon v. Simon, supra; Landreth v. Landreth, Mo.App., 326 S.W.2d 128; Harriman v. Harriman, Mo.App., 281 S.W.2d 566.

Defendant also complains about the allowance of $650 to plaintiff for attorney's fees. What we have said regarding the alimony award is likewise applicable to that allowance, for the same considerations govern the payment of both. Simon v. Simon, supra; Arnold v. Arnold, Mo., 222 S.W. 996; Graves v. Wooden, Mo.App., 291 S.W.2d 665.

Defendant's final point is that the court erred in permitting the plaintiff to testify, over defendant's objections, to indignities committed more than five years prior to the filing of plaintiff's petition because they were barred by the statute of limitations. In his printed argument, however, defendant also refers to the ten year statute, and seems to rely on both, without citing a single pertinent case. Defendant admits that there is nothing in our laws on divorce, Chapter 452, which supports his theory, and likewise concedes that there is no express reference to an action for divorce in the statutes of limitations governing personal actions, Sections 516.-100 through 516.370. What he ultimately contends, as best we understand him, is that since Section 516.100 states that all "civil actions" can only be commenced within the periods prescribed, and Section 516.-110(3) provides that there shall be commenced within ten years, "Actions for relief, not herein otherwise provided for," plaintiff's action was barred by the ten year statute.

Our examination of the authorities has disclosed no Missouri case on the subject, and but few elsewhere. Bishop, in his work on Marriage, Divorce and Separation, Vol. 2, Ch. XII, states that the ecclesiastical courts of England did not recognize the statutes of limitations as an absolute bar to a tardy action for divorce, but reserved the right to withhold the decree when the applicant had been guilty of unreasonable delay in presenting or prosecuting his petition; and that this reservation was carried forward into the English Divorce Act which took effect in 1858. And see Garris v. Garris, 188 N.C. 321, 124 S.E. 314. Bishop also states the general rule to be that statutes of limitations in this country, "in the mere ordinary words common in our States, are not extended by interpretation to suits for divorce. * * *" (Bishop, Sec. 426). Some of the states have adopted statutes which expressly limit the time within which a suit for divorce or separation must be brought after the matrimonial offense is committed or discovered. Smedley **v.**

Smedley, 30 Ala. 714; Berkley v. Berkley, Sup., 142 N.Y.S.2d 273; Wickliff v. Wickliff, 191 Ark. 411, 86 S.W.2d 553. We find a division of opinion among the remainder of those courts which have passed upon the issue of whether a general or residual statute of limitations, such as Section 516.-110(3), is applicable to an action for divorce. For those holding that such a statute is not a bar see Mosely v. Mosely, 67 Ga. 92; Tufts v. Tufts, 8 Utah 142, 30 P. 309, 16 L.R.A. 482; Flynn v. Flynn, 149 Ga. 693, 101 S.E. 806; Johnson v. Johnson, 50 Mich. 293, 15 N.W. 462; Kittle v. Kittle, 86 W.Va. 46, 102 S.E. 799. For cases to the contrary see Franzetti v. Franzetti, Tex.Civ.App., 120 S.W.2d 123; Garris v. Garris, 188 N.C. 321, 124 S.E. 314.

However, even in states having a statute of limitations expressly applicable to divorce, as well as in those holding that their general statutes apply, it is held that a continuing offense is not barred. Wickliff v. Wickliff, supra; Franzetti v. Franzetti, supra. In the instant case the indignities shown by plaintiff included those of defendant's failure to support her, Lowe v. Lowe, Mo.App., 229 S.W.2d 7; Becker v. Becker, Mo.App., 155 S.W.2d 904; and abandonment, which has been held to be an indignity, Smiley v. Smiley, Mo.App., 207 S.W.2d 862. Both continued until the filing of the petition. Furthermore, plaintiff alleged and proved defendant's desertion as a second and independent ground for divorce. Defendant tacitly concedes that desertion is a continuing marital offense, but argues that the desertion was "stopped," after about 16 or 17 years, because defendant testified that four or five years before the trial he "said something" to plaintiff about returning and plaintiff " * * * said it would be just like it was before so that was it." Of course, the statutory period of one year had long since expired. Furthermore, if made at all, defendant's casual and cursory reference to the possibility of his return, without any effort to convince plaintiff of his repentance, of the sincerity of his intentions, or of any promise to mend his ways, can scarcely be considered a bona fide and good faith attempt to effect a reconciliation. Creasey v. Creasey, 168 Mo.App. 68, 151 S.W. 219.

For the reasons stated, the Commissioner recommends that the judgment awarding plaintiff a divorce be affirmed; that those portions ordering defendant to pay to plaintiff $4,500 as alimony in gross and $650 as attorney's fees be reversed; and that the cause be remanded for such further action as to such allowances as the plaintiff may desire to take.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment awarding plaintiff a divorce is affirmed; those portions ordering defendant to pay to plaintiff $4,500 as alimony in gross and $650 as attorney's fees are reversed; and the cause is remanded for such further action as to such allowances as the plaintiff may desire to take.

WOLFE, Acting P. J., ANDERSON, J., and JACK P. PRITCHARD, Special Judge, concur.