### KINDER v. KINDER.
#### No. 28778.

St. Louis Court of Appeals.

Missouri.

April 20, 1954.

J. Grant Frye, Cape Girardeau, for appellant.

C. Willard Max, Clayton, Chaim H. Zimbalist, Clayton, of counsel, for respondent.

BROADDUS, Special Judge.

This is an action for divorce on account of indignities alleged to have rendered plaintiff's condition intolerable. Defendant filed an answer and cross-bill. At the conclusion of the evidence the court dismissed defendant's cross-bill and granted a decree to plaintiff. She was also awarded alimony in the sum of $15 per week, and an attorney's fee of $200. Defendant has appealed.

Plaintiff and defendant were married at Illmo, Missouri, on April 18, 1931, and maintained their home there until July 16, 1951. On the latter date plaintiff went to St. Louis County, near Clayton, where she has since resided.

One child, a girl, was born of the marriage between plaintiff and defendant. Plaintiff had been previously married and two daughters were born of that marriage. At the time of plaintiff's marriage to defendant the two daughters by her previous marriage were four and six years of age

respectively. At the time of the trial all three girls were married and living with their husbands.

Plaintiff testified that during the time she was married to defendant seven separations took place. The first separation occurred in 1939; three took place in one year— 1950. Plaintiff returned to defendant six times. According to plaintiff: "I left him because he ran around with other women and he was gone all hours of the night, three, four nights a week, that is exactly why I left him." Plaintiff testified that on each occasion when she returned to the home defendant "promised he would stay home with me, he would take care of the home and he wouldn't run around any more. And he would stay home for two weeks at a time, and when those two weeks were up, he just started running around again;" that many times defendant would remain away from home all night. Plaintiff would ask him where he had been and "the only thing he would ever say was that he was playing cards or out somewhere—that was the only excuse he would ever give me."

Plaintiff further testified that she found pictures of two different women in defendant's bill fold; that on one occasion she found a hair-net in defendant's automobile, and at another time an ear ring; that neither the hair-net or ear ring belonged to plaintiff or her daughters.

Plaintiff also testified that defendant was "very mean, very rude"; that "he said some of the horriblest things a man could ever say to his wife"; that he drank intoxicating liquor, and when he came home after he had been drinking he would become very abusive; that on one occasion he threatened to shoot her with a shot gun.

Plaintiff called as witnesses Mr. and Mrs. Guy Mullen for whom she had worked as a housekeeper for approximately a year and a half immediately preceding the trial. Both testified that plaintiff bore a good reputation for honesty, truthfulness and morality. Mr. Mullen stated that when plaintiff first came to his home "she was emotionally disturbed."

It is undisputed that plaintiff is deeply religious and a regular church attendant.

Plaintiff worked in the Ely-Walker Garment factory at Illmo for approximately 15 or 16 years. The money she received from her employment went into the general fund of the family; helped buy the home, helped buy the furniture.

Defendant known as "Dob" Kinder is a section foreman for the "Cotton Belt" Railway Company, and had worked for that company since 1927. He testified that he treated plaintiff with kindness, but "it just seemed like we couldn't get along. She just kept running off." He denied that he kept company with other women; denied having pictures of other women in his bill fold; denied having any knowledge of a hair-net or ear ring being in his car; and denied that he ever threatened to shoot plaintiff.

Defendant testified that the differences between plaintiff and himself arose over the children; that plaintiff did not want him to correct the girls.

The evidence shows that in 1939 defendant was stabbed severely by plaintiff. The record shows that at the close of the cross-examination of defendant the court said: "I haven't gotten a clear idea or understanding of what happened that time when you were cut. * * * Suppose you tell your story and I will have her tell hers. A. That evening I just came in and he (plaintiff's father) was drinking and was unruly and was drunk and he and I had a few words. I don't remember what it was about; and she must have thought I was going to hurt him, and she went and got a knife and went to stabbing me and they carried me out; the neighbors across the street carried me out."

After both sides had rested, the court called plaintiff back to the stand and said to her:

"Mrs. Kinder, what caused all that trouble between him and your father? A. My father wasn't implicated in it. Mr. Kinder and I had been at the Cape to get wallpaper. He stopped on the highway and got some beer, and when he got home he wanted to go back to the Cape. He was going to see a girl by the name of Bee Cook and I didn't want Mr. Kinder to go back to the Cape because we had just gone back together and I felt that his duty was home with me and he got into a ruckus and he came in to where we were, pushing my Dad. He did not hit me. Mr. Kinder hit my Dad and broke three of Dad's ribs, and that started it.

"Q. Was that when you got the knife? A. I did.

"Q. Did you cut yourself? A. No sir; there was no cut on my neck or my body anywhere.

"Q. This was in 1939? A. Yes, sir.

"Q. You lived with him after that? A. Several months after that. He came back and wanted to live together again; and we had a car at that time and he sold the car, so we decided that we could maintain the home and try to go back together again, like a married couple would; but it did not work out."

Defendant contends that plaintiff has failed to sustain the burden of proof required of her to show that she is an innocent and injured party and entitled to a decree.

It is true, as defendant asserts, that it is the duty of an appellate court to review the evidence on appeal in a divorce case and enter such judgment as the trial court should have entered.

Each case in which a divorce is sought on the ground of indignities must be determined on its own facts. In the instant case no witness was called to corroborate plaintiff's testimony. In fact, plaintiff and defendant were the only witnesses, except Mr. and Mrs. Mullen. However, as said by this court in the case of Stevens v. Stevens, Mo.App., 158 S.W.2d 238, 240, 241: "We know of no law requiring that in a divorce case the testimony of the prevailing party must necessarily be corroborated."

