**RICHARDSON v. RICHARDSON.**

Nos. 22002, 22004, 22039.

Kansas City Court of Appeals.

Missouri.

June 7, 1954.

Orr & Sapp, Columbia, for defendant.

Sapp & Bear, Wm. H. Sapp, Columbia, for plaintiff.

BROADDUS, Judge.

The plaintiff brought this suit for divorce against his wife. His petition alleged in-

dignities which he asserted rendered his condition intolerable. Defendant filed an answer and a cross-petition asking for separate maintenance. A decree was granted to plaintiff. Defendant appealed. Said appeal is designated on the docket of this court as No. 22039.

The trial court awarded to the defendant wife temporary alimony, attorney's fees and suit money. From those orders and judgments plaintiff appealed and those appeals are numbered 22002 and 22004 on our docket.

Plaintiff and defendant were married on April 1, 1945. They separated about January 1, 1951, became reconciled April 1, 1951, and thereafter lived together until December 1, 1952. Plaintiff had been previously married and a daughter was born of that marriage. Defendant also had been previously married and she too had a daughter by her first marriage. At the time of the trial in March, 1953, plaintiff was 55 years of age, defendant 53.

Plaintiff, an electrical contractor in Columbia, has resided all of his life in Boone County, Missouri. He testified that defendant was cool and indifferent toward him, and would not speak to him or go out with him alone, or have anything to do with him at all for weeks at a time; that during the last few years of their married life she embarrassed him time after time by preparing meals supposedly for both of them, and then refusing to call plaintiff to eat with her; that on many other occasions she refused to prepare his meals, and he would go in after she had left the kitchen and prepare his own evening meals; that for weeks at a time she refused to make his bed and clean his room; that she was wasteful and extravagant, spending her allowance which varied from $165 to $200 before the end of each month; that she grew more quarrelsome during the last three years of their married life; that she was very indignant toward him most of the time; that once when he tried to talk to her she began screaming to attract the attention of others and threatened to call the police and the sheriff; that on another oc-

casion when he tried to lie down beside her on the bed for the purpose of talking to her she scratched his face and shoulders and screamed so loudly that a roomer, Mrs. Venable, who resided upstairs, came down. Plaintiff was bleeding when she arrived. Plaintiff further testified that on one occasion defendant angrily struck him in the face with a house slipper when he tried to talk to her; that on another occasion he put his arm around her while she sat on the piano bench and she started screaming loudly and threatened to call the police.

Plaintiff further testified that defendant repeatedly complained of the attention shown by plaintiff to his daughter, Laverne, falsely charging that Laverne was trying to separate them; that "any time she (defendant) would mention Laverne's name it would be in anger or some disrespect of trying to pull my leg for what she could get and then throw me away. She wouldn't mention the child's name except in that respect. I don't think she mentioned the child's name in 8 years except in that respect. And that was continuously just at various times over a period of the last three or four years."

Plaintiff also testified that defendant objected to his home located at 217 Waugh Street in Columbia, which he had remodeled and redecorated at great expense immediately before their marriage; that she became discontented in that home within a few months and also with the neighborhood, although it was in a fine part of Columbia; that she harrassed him until he purchased a house at 308 Broadway, and reconditioned it at great expense; that within a year she was again dissatisfied and forced him to sell the house and purchase the apartment which she was occupying at the time of the trial; that he spent $1,000 reconditioning the apartment; that within a year after they had moved into the apartment she wanted to sell it and move somewhere else; that during the last two years of their married life defendant repeatedly urged him to give her a good property settlement and obtain a divorce from her; that she wanted him to give her a $16,000 apartment building; that she made insistent and con-

tinuous demands during the last three years of the marriage for the conveyance to her of a part of his property.

In the summer of 1952, plaintiff was made a member of the Boone County Fair Association. When defendant learned of this fact she couldn't understand why they had appointed plaintiff since, as she said he "had no friends." During the same summer, the Tiger Shrine Club gave a show for crippled children at a theatre in Columbia. Plaintiff was asked by the committee to take five of these little children from a hospital to the theatre, which he did. When he told the defendant that it had been necessary for him to carry some of the children in his arms she said "the only reason you did that was to impress the people and make a showing for your part of it."

Plaintiff further testified that defendant refused to associate with his people; that "she never felt comfortable around them," and didn't consider them to be in her "higher circle"; that defendant repeatedly told him that he was crazy and should consult a doctor; that one time in the presence of Mrs. Venable the defendant said that she was afraid that plaintiff would kill her. We need not recite other matters which plaintiff asserted caused him to be embarrassed and humiliated.

Defendant was born in Macon, Missouri, and lived there continuously until she moved to Columbia in July, 1943. After arriving in Columbia she managed a dress shop and later worked at the Crown Drug Store there.

Defendant testified that she and her husband got along fairly well during the first year of their marriage; that plaintiff gave her an allowance of $100 a month with which to pay all of the household expenses, including her clothing, "and then he expected me to save out of that so that's when our trouble started."

Defendant also testified that there were times when she was cool and indifferent toward plaintiff, but that she "was driven to it"; that at the time she scratched him "he had proposed an indecent sex act";

that it was his fault that she did not speak to him for weeks at a time; that he would pout and sulk; that he used profane language; that when they went to dances plaintiff was always "patting and loving" some other woman; that plaintiff would be gone over the week-ends and when she would inquire as to where he had been he would reply: "It's none of your God damn business, I will go and come as I please"; that she found lipstick on his clothing many times; that on the night of December 28, 1952, she saw plaintiff with another woman in a car; that it was plaintiff's car and that the car was coming around a corner and when the woman in the car saw defendant on the street corner "she ducked immediately," and defendant was unable to identify her. Defendant stated throughout her testimony that plaintiff is sexually confused. She proposed "that he see a psychiatrist." She admitted that she said to plaintiff, "I'm not the one that is crazy; you are the one that is crazy"; that plaintiff had become so "repulsive" to her that "I don't think it would be humanly possible for us to live together * * *."

Defendant denied that she had been unkind to plaintiff's daughter or to any of his people. She also denied that she had been dissatisfied with any of the houses in which she and plaintiff had lived.

A great many witnesses testified that both plaintiff and defendant bore good reputations in Columbia. However, one witness did state that plaintiff's reputation was bad.

Plaintiff being recalled to the witness stand denied having shown any undue attention to any women present at the dances which he and defendant attended. He also denied there was ever any lipstick on his clothing or that he had ever solicited defendant to indulge in any unnatural sex acts; that the first time he had ever heard such charges was when defendant was on the stand; that he never used the vulgar expressions which she attributed to him, and "never used an oath on her in my life and I never laid a rough hand on her in my life." Plaintiff had previously denied

that he was in a car with another woman on the evening of December 28, 1952, as testified to by his wife. In this he was corroborated by his brother Jesse, who testified that plaintiff was at the witness' home at the time the occurrence was supposed to have taken place.

This case has been ably briefed on both sides. Defendant strenuously contends that plaintiff has failed to sustain the burden of proof required of him to show that he is an innocent and injured party and entitled to a decree of divorce.

■ It is true, as defendant asserts, that it is the duty of an appellate court to review the evidence on appeal in a divorce case and enter such judgment as the trial court should have entered.

■ It is likewise true that each case in which a divorce is sought on the ground of indignities must be determined on its own facts; "no hard and fast rule is or can be prescribed as to what acts or conduct are sufficient." Culp v. Culp, Mo.App., 164 S.W.2d 623, 625.

■ In the instant case plaintiff's testimony was in some respects corroborated. However, as said in the case of Stevens v. Stevens, Mo.App., 158 S.W.2d 238, 240, 241: "We know of no law requiring that in a divorce case the testimony of the prevailing party must necessarily be corroborated."

There is an irreconcilable conflict in the testimony in this case. There is one thing in particular about defendant's testimony that is difficult for us to understand. She testified at one time that plaintiff on numerous occasions asked her to give him a divorce, but that: "I never once wanted a divorce. I told him, 'I don't want a divorce. We can get along if we try'". On the other hand she asserted that plaintiff was so "repulsive" to her that it would be "impossible" for her to live with him as his wife.

■ It is our conclusion that the instant case falls within the rule announced

many times by our appellate courts that, in divorce suits, great deference should be paid to the finding of the trial court, who had the parties and witnesses before him and was in much better position to judge of their credibility than is this court. We have only the printed transcript before us. The following language by Judge Westhues, in the case of Andris v. Andris, 343 Mo. 1162, 125 S.W.2d 38, 40, applies to the instant case: "After a careful reading of the record the writer of this opinion would hesitate to enter a judgment without having the * * * advantage of personally hearing and observing the witnesses." The memorandum opinion filed by the learned trial judge in the instant case discloses that he gave careful and thoughtful consideration to every phase of the testimony. We defer to the conclusion reached by him that plaintiff was entitled to a decree.

We now come to plaintiff's complaint as to the action of the trial court in allowing defendant temporary alimony, attorney fees and suit money.

As stated, under our case No. 22004, plaintiff appealed from the order "entered of December 29, 1952, adjudging the payment by plaintiff of temporary alimony in the sum of $150 per month, and attorney's fees of $300, and from the order entered on April 27, 1953, adjudging payment of an additional attorney's fee of $700."

Under No. 22002 plaintiff appealed from the third order entered July 7, 1953, which provided that defendant "in addition to the occupancy of the home recover of and from the plaintiff the sum of $150 per month, payable monthly pending this appeal; the sum of $250 for her transcript on appeal; the sum of $150 for brief; and $300 for her attorney's fee."

Plaintiff contends that defendant was possessed of sufficient property with which, if converted into cash or used as security, to support and defend herself and prosecute her cross-claim, and that the court erred in making the allowances. He does not claim that the amounts allowed were excessive.

Plaintiff *paid* to defendant the $300 attorney fee, and also *paid* the temporary alimony awarded to her under the first order (that of December 29, 1952) for a period of approximately four months, or up until the day the decree of divorce was entered.

.The evidence shows that plaintiff's net worth was $35,000 or $36,000. In addition to that he held in his name together with his daughter's $10,000 in stocks and bonds. His income varied from $14,895.66 in 1949, to $6,276.80 in 1952. He had a contract to do electrical work for the University of Missouri of approximately $118,000 and expected to make a profit. Defendant possessed $2,900 in government bonds, $250 in cash, a diamond wedding ring, and a diamond ring given to her by plaintiff at the time of the marriage. She had a third diamond ring which she had acquired before her marriage to plaintiff. She had been sick and unable to work for several months prior to the trial.

Plaintiff chiefly relied upon the Rutledge case, Rutledge v. Rutledge, 177 Mo.App. 469, 119 S.W. 489, and the Penningroth case, Penningroth v. Penningroth, 71 Mo.App. 438. Those cases have been referred to many times in later decisions, and still the law remains that the allowance of alimony *pendente lite* to a wife pending a divorce action, while not regarded as absolute, is within the discretion of the trial judge. Whitwell v. Whitwell, 318 Mo. 476, 300 S.W. 455. As said by this court in Robertson v. Robertson, 137 Mo. App. 93, 119 S.W. 533, 534: "All that can be said as to the law in such cases may be resolved into one sentence, viz., that it is largely in the discretion of the court whether to allow alimony *pendente lite* in any given case." And unless it is made *clearly* to appear that such discretion has been abused the appellate court will not interfere. In the Whitwell case, supra, the evidence disclosed that the husband was worth $75,000 and his wife had separate property worth $8,000, which was in interest-bearing securities and real estate. And, after referring to the Penningroth case, supra, the Supreme Court held that the trial court was well within its discretion in allowing alimony *pendente lite* to the wife. We cannot say that the trial court abused its discretion in this instance.

Plaintiff raises for the *first* time in a reply brief another point challenging the authority of the court to make the above allowance. This we need not consider. Defendant contends that the amounts awarded for attorney's fees and expenses were inadequate and should be increased. She filed no motion for a new trial challenging the sufficiency of those orders, nor did she appeal therefrom. She cannot now complain. Callahan v. Callahan, Mo.App., 192 S.W.2d 48.

The judgment of the trial court as to the decree of divorce (case No. 22039) is affirmed. The orders in cases Nos. 22002 and 22004 are likewise affirmed.

All concur.