Maryan A. MATHEWS, (Plaintiff) Respondent,

v.

Robert F. MATHEWS, (Defendant) Appellant.

Nos. 30305, 30306.

St. Louis Court of Appeals. Missouri.

June 21, 1960.

Motion for Rehearing or to Transfer to Supreme Court Denied Sept. 6, 1960.

James A. Finch, Jr., Finch, Finch & Knehans, Cape Girardeau, v. Lee McMahon, St. Louis, for appellant.

Lashly, Lashly & Miller, John H. Lashly, Billie R. Bethel, St. Louis, for respondent.

SAM C. BLAIR, Special Judge.

Consolidated and before us are two appeals from rulings in the trial court in a divorce proceeding: (1) on "Motion of plaintiff for additional allowance for support of the children and for modification and interpretation of the decree," number 30,305, and (2) on "Motion of plaintiff for attorneys' fees" for legal services rendered plaintiff in defense of "Defendant's motion for change of custody," number 30,306.

On March 6, 1954, the plaintiff, Maryan A. Mathews, was granted a divorce from the defendant, Robert F. Mathews. The general custody of the four children of the parties was awarded to the plaintiff with reservations to the defendant for specified rights of visitation during spring and summer vacations and Christmas holiday periods. The defendant was ordered to pay the plaintiff $800 per month for the support of the children and additional contingent allowances. The original decree provided also that: "Any expense of tuition and board at private schools for said children shall be paid by the defendant to such school or schools as the parties hereto mutually agree that the children shall attend. * * * In matters affecting the health, education, and moral or physical environment and welfare of said children, or any of them, both parents shall have an equal voice, and in case of inability to come to agreement they shall resort to the court for its decision; * * *." It is this provision of the decree that the trial court construed and applied in ruling on the "motion of plaintiff for an additional allowance for support of the children and for modification and interpretation of the decree." The prayer of that motion was that "the court declare that the question of the attendance of Patricia, the daughter of the parties, at Mary Institute in September, 1958 and thereafter is a matter affecting 'the health, education and moral or physical environment and welfare' of said child and that it would be in the best interest of said child Patricia that plaintiff be provided with an additional allowance from defendant for the purpose of carrying through the program as hereinabove described of enrolling her said daughter Patricia in Mary Institute and that the court so interpret the decree."

The trial court granted the motion, and found that plaintiff should recover from defendant $300 already advanced as tuition by plaintiff for Patricia's attendance at Mary Institute and ordered that thereafter he should pay Patricia's tuition when due. The defendant appeals.

The appeal on this ruling is based on the following grounds: (1) there was no proof that the $200 paid monthly for support of Patricia would not cover such tuition; (2) plaintiff did not establish that she had no independent means and her own evidence actually showed that she had "considerable net worth and substantial income" which she ought to use to pay the tuition herself; (3) there was no proof of changed conditions and need for an additional allowance; (4) there was no evidence of an agreement between the parties that Patricia attend Mary Institute; and (5) there was no evidence that attendance by Patricia at Mary Institute was necessary for her health, education, and moral or physical environment and welfare within the meaning of the decree.

In the outset we emphasize that we are ruling only the controversies which the parties raise by the record they present to us, and no others. There is before us nothing questioning the authority of the trial court to make the provision in the original decree now under scrutiny governing the education of the children, and no claim that the trial court was at all events without power to require defendant to pay the arrearage, $300, in Patricia's tuition accruing prior to its ruling. The questions presented embrace only the construction of the present provision and the sufficiency of the evidence to support the award under a correct construction of it.

■ We believe that the claim that there is no proof that the $200 paid monthly for the support of Patricia would not cover such tuition is answered by the decree itself. In the first place, the decree explicitly requires that plaintiff shall use the $800 monthly allowance "for the support,

maintenance and exclusive welfare of said children." Tuition at private schools is specially provided for in subsequent paragraphs of the decree. To us it is obvious that it was not intended that any part of that allowance for support of the four children should be devoted to any "expense of tuition and board at private schools for said children" when this last "expense" was additionally and specially provided for later in the decree and expressly made the obligation of defendant.

■ Our view is that the claim that plaintiff failed to establish that she had no independent means to pay the tuition and that actually she had "considerable net worth and substantial income" which she could employ to defray that expense is without merit. It is the primary duty of a father to support and educate his children and he is not absolved from it because the mother may have independent means. Luplau v. Luplau, Mo.App., 117 S.W.2d 366; Lodahl v. Papenberg, Mo.Sup., 277 S.W.2d 548; Roberts v. Roberts, Mo.App., 292 S.W. 2d 596; Keller v. City of St. Louis, 152 Mo. 596, 54 S.W. 438, 47 L.R.A. 391; Winner v. Shucart, 202 Mo.App. 176, 215 S.W. 905; Mothershead v. Mothershead, 236 Mo.App. 737, 161 S.W.2d 669; 67 C.J.S. Parent and Child § 15b; 22A Mo.Dig., Parent & Child, ☞3(1), 3.1(3). Moreover, the original decree explicitly provided that the father should bear these obligations.

■ Of the complaint that there was no proof of changed conditions and of need for an additional allowance, we think that there was no requirement for proof of changed conditions in the sense we ordinarily understand where the usual modification of a divorce decree is sought. The provision of the decree under study makes no such requirement. It requires the defendant to pay all expenses for tuition and board of the children in private schools. Regarding the education of the children, it provides that each parent shall have an equal voice, and if they cannot "come to agreement they shall resort to the court for decision." Our judgment is that a failure

of the parents to agree under this provision regarding the education of the children is all that is required to entitle the one parent or the other to resort to the court for a decision. After such resort, it is of course the duty of the court to investigate the circumstances of the parties and the educational program proposed and then to decide the dispute on its merits always holding the welfare of the child in view. These observations demonstrate besides, we think, that defendant's claim that the trial court could not make an order respecting the education of Patricia, absent agreement by the parties, is plainly untenable.

Questioned also is the sufficiency of the evidence to support the ruling of the trial court that "attendance by Patricia at Mary Institute was necessary for her health, education, and moral or physical environment and welfare" within the meaning of the decree. The parties are in agreement on the facts. The financial ability of defendant to pay this tuition is not an issue, for he admitted his ability while testifying. On May 1, 1956, plaintiff received a letter from defendant proposing a drastic amendment to the decree which would grant him custody of the four children during one half the school year with a division of the summer and spring vacation periods. As observed already, the original decree granted plaintiff general custody of the children, except that defendant was to have custody on alternate week-ends and during one half the vacation periods. There were other provisions alternating custody of the children in even-numbered and odd-numbered years during parts of the Christmas holidays. In the letter, defendant stated that the arrangement proposed would afford him an opportunity to have more influence on the children. He also stated, "If this can be arranged I will agree to send both the girls, * * * (Maryan and Patricia) to Mary Institute and pay their full tuition and any related expenses." There is no evidence that plaintiff answered the letter.

In January 1957, Maryan and Patricia took examinations for entrance to Mary Institute but neither was successful. In January 1958 they took the examinations again. Patricia was successful but Maryan was not. Plaintiff testified she took the girls to these last examinations, making the necessary arrangements for them, and could not say whether defendant knew she was doing so. In April of that year plaintiff was notified that Patricia had been accepted by Mary Institute. She notified defendant's attorney and later learned that he had spoken to defendant, but she received no word from defendant or his attorney as to whether defendant "said yes or no about it." She borrowed $300 from her mother and paid the first half year's tuition for Patricia. Patricia entered Mary Institute in September of that year. Plaintiff testified that it was her "desire that Patricia remain as a student in Mary Institute" and that she thought "It is good for her—a good experience for her." She stated that "the girls (Patricia and Maryan) were not getting the proper groundwork at Ladue (schools) that they should get." She recognized "that the Ladue public schools are good schools * * * the best in the country," but the progress of her girls was unsatisfactory there. Defendant himself testified that Maryan was in "such bad shape at Ladue and at Rossman she went to Whitfield, which is a tutoring school as you know, and it is the last place; not even Ladue would take her back because they would have to put her back and she was too old to be put back a grade. They were afraid it would give her an inferiority complex." In May 1958 the parties agreed that Maryan should move to defendant's home, and she did so. In September of that year he assumed the obligation for her tuition at Whitfield amounting to $1,400 annually.

The defendant testified that he had no objection whatever to his daughter attending Mary Institute. He thought it was a good enough school "to have given it quite a sizable donation." He was willing for both of the girls to attend Mary Institute if plaintiff agreed to the terms put

forward in his letter. The condition outlined in his letter, plaintiff's assent to his proposal for increased custody, was the only one standing in the way of payment by him of the tuition for Maryan and Patricia at Mary Institute.

The trial court was dealing with this situation: The parties were unable to come to agreement on plaintiff's proposal that Patricia enter Mary Institute. Defendant admitted his ability to pay her tuition at this school. He made no claim that payment of the tuition would work a hardship on him or that the charge for it was unreasonable. He suggested no alternative to Mary Institute. Plaintiff testified that both Patricia and Maryan had been progressing unsatisfactorily in the Ladue Schools. There was no denial of this by defendant. Maryan had been transferred to Whitfield, a tutoring school, because of her lack of progress, and Patricia had been transferred to Rossman school. Plaintiff's motion alleged that Patricia during the year previous to this motion had "pursued her course toward Mary Institute and has *repeated* the 4th grade at Rossman School in St. Louis for the purpose of improving her academic and study habits so as to be able to qualify for her entrance into Mary Institute. That her scholastic record measurably improved and during the last two months of the immediate past school year she was accorded a place on the honor roll." Defendant makes much of this in his brief. It is true no one disparaged Rossman school, but Patricia was sent there by her mother to qualify her for entrance in Mary Institute. Evidently her previous progress had been quite unsatisfactory because it was necessary for her during her year at Rossman to *repeat* the fourth grade. Devoting two years to the fourth grade likely accounts for her presence on the honor roll at Rossman during the last two months of the school year. We do not regard this averment in plaintiff's motion, standing alone, or coupled with the other facts, as constituting a bar to the transfer of Patricia from Rossman to Mary Institute.

Each party praised Mary Institute. Plaintiff expressed "her desire that Patricia remain as a student in Mary Institute"; that "it is good for her—a good experience for her." Defendant approved of it as a school when asked about its quality and said it was a good enough school for him "to have given it a sizable donation." He said he had absolutely no objection whatever to his daughters attending this school. He said he was willing for both girls to attend this school. But he would not agree to their attendance unless plaintiff would accede to his demand that the decree be modified, according to his drastic terms, to allow him to have all of the four children in his custody during one half of each school year. In consequence, the trial court was authorized to find, we think, that Patricia had not been doing satisfactorily in school until she entered Rossman for training for Mary Institute, that Mary Institute was approved by both parties as a school for Patricia, and that plaintiff desired and the defendant had no objection whatever and was willing for Patricia to attend that school, and that he was able to pay her tuition without hardship.

Under our construction of the decree, and taking into account the failure of the parties to agree, the ability of defendant to pay without hardship, the approval of Mary Institute by both parties as a school for Patricia, the desire of plaintiff and the willingness of defendant, except for his irrelevant proviso, that Patricia attend that school, we believe that the trial court was authorized by the decree, as we construe it, and by the showing made, to rule as it did, and that in so ruling it exercised a sound discretion. Its ruling is affirmed.

Prior to the trial of the motion just discussed, defendant filed a motion for transfer of the custody of the children to him. The motion is not in the record but defendant states that one of the averments was an altercation between plaintiff's present husband and Maryan during which she some-

how received a black eye. The details are not supplied nor is fault fixed. The motion was never brought to trial. But plaintiff's counsel conducted negotiations with defendant's counsel and performed substantial labor in preparing for the trial of the motion. For these legal services plaintiff filed her motion for attorney's fees and this motion was tried simultaneously with the motion regarding Patricia's tuition and on the same evidence.

■ That there was no trial on the merits of the motion for custody is not determinative of defendant's responsibility to bear the expenses which the plaintiff incurred, if otherwise she is entitled to recover those expenses. Gross v. Gross, Mo. App., 319 S.W.2d 880, 887 [10]. If a husband "wishes to engage in litigation with respect to matters connected with his divorce and incidents thereto he should be prepared to pay the expenses thereof which the law has cast upon him. He cannot escape that liability as long as he has sufficient means, either by way of income or property, out of which it can be satisfied." [305 S.W.2d 83] Gregg v. Gregg, Mo.App., 272 S.W.2d 855; Wonneman v. Wonneman, Mo.App., 305 S.W.2d 82; Gross v. Gross, supra. Of course, if a wife is possessed of sufficient means of her own to present her side of the dispute there is no reason for requiring the husband to finance her. McKenzie v. McKenzie, Mo.App., 306 S.W.2d 588. The broad discretion of trial courts in making allowances of attorneys' fees must be exercised in the light of the wife's necessities and the husband's ability to pay, each case depending on its own merits. Further, it is settled that a wife need not be in a state of destitution before she can be granted an allowance. The true test in this regard is whether the wife is possessed individually of sufficient means, to which she may reasonably be required to resort, and with which she may adequately prosecute or defend, as the case may be. Graves v. Wooden, Mo.App., 291 S.W.2d

665; Price v. Price, Mo.App., 281 S.W.2d 307.

■ The trial court ordered defendant to pay plaintiff $600 as an attorney's fee. On this issue defendant, while testifying, admitted his ability to pay an attorney's fee and no such question exists here. The reasonableness of the amount allowed is not questioned in defendant's brief, either in his "Statement," "Points Relied On," or "Argument," and that issue is also absent. City of St. Joseph v. Hankinson, Mo.Sup., 312 S.W.2d 4; Lammers v. Greulich, Mo. Sup., 262 S.W.2d 861; Supreme Court Rule 1.08; [1] 3 Mo.Dig., Appeal & Error, ■

■ On trial of this motion, defendant stated there was no reason why he could not pay a fee except that "if I have to pay her attorney's fees," she "will have me in court the rest of my life." This apprehension is of course no legal reason for denying an attorney's fee. Harriman v. Harriman, Mo.App., 281 S.W.2d 566. Another reason advanced as exempting him is the alleged altercation between the plaintiff's present husband and Maryan. Defendant asserts that plaintiff's present husband's alleged conduct prompted the filing of the motion to transfer custody. He made an offer of proof in this regard and it was rejected. He contends the offered evidence should have been "admitted upon the issue of whether he should pay plaintiff's attorney's fees." The claimed occurrence bore no relevance to that issue. Determining motions for allowances, courts do not consider the merits of the case. Price v. Price, supra; Crooks v. Crooks, Mo.App., 197 S.W.2d 686; Burtrum v. Burtrum, Mo.App., 200 S.W.2d 80; Downing v. Downing, Mo. App., 279 S.W.2d 538; Gregg v. Gregg, supra.

What is principally contended is that plaintiff was shown to be possessed of sufficient means to defend against the motion for transfer of custody and that she should employ her own means and not look to the defendant to finance her defense.

1. Now Civil Rule 83.05, V.A.M.R.

At the time of the trial Maryan had left her mother's home and was living with her father. The $800 monthly allowance for the four children had been correspondingly reduced by agreement to $600. Defendant asserts the $600 allowance plaintiff was receiving was available for payment of her attorney's fees. But the decree restricted expenditures from this allowance to "the support, maintenance and exclusive welfare of said children," and plaintiff had no right to use any of it to pay her own attorney's fees.

Plaintiff testified that she owned a $50,000 house which she and her present husband and her children occupy, the income from an irrevocable trust paying her "approximately $4,000 a year," and some stocks from which she received "about $208 per year." She had no other assets or income. Of course there are property taxes to be paid on the house and this court knows that houses require repairs from time to time. Presumably, for there is no evidence to the contrary, the plaintiff must pay those taxes and for those repairs out of her income of approximately $4,208 a year, which itself is subject to both federal and state income taxes. Consequently, plaintiff's net income must be much less than $4,208 a year.

■■■ We have observed that a wife need not be reduced to destitution before she is entitled to an attorney's fee. Graves v. Wooden, supra; Price v. Price, supra. Determining whether or not a wife is possessed individually of adequate means, to which she may reasonably be required to resort for payment of her attorney's fees, in instances where the wife has some means, courts compare the means of the wife with those of the husband to ascertain whether it is reasonable to require her to look to her own means or to permit her to look to her husband's means. Gregg v. Gregg, supra; McKenzie v. McKenzie, supra; Graves v. Wooden, supra; Wonneman v. Wonneman, supra; Crooks v. Crooks, supra; Adkins v. Adkins, Mo.App., 325 S.W.2d 364. This is equitable for a wife of little means oftentimes should have the right to look to a husband of larger means for the payment of her attorney's fees, if the disparity in means is great enough.

Before us there is no evidence whatever of the defendant's means. Counsel for plaintiff sought to establish defendant's resources by cross-examination and was met with his counsel's objection: "If the court please, we object to that. We have not filed anything raising any question as to Mr. Mathews' ability to pay. We do not expect to make an issue of that. We are not contending and are not resisting this motion on the basis of his inability to pay, and that being true, then the details of what his income is would certainly not be pertinent. The Court: I think that's right. * * *. Counsel for plaintiff: I am aware of the rule I need to prove up the ability to pay but if it is conceded—Counsel for defendant: We make no issue of that and are not putting his ability to pay in issue at all." Counsel for plaintiff then abandoned all further inquiry regarding the resources of the defendant and proceeded to other aspects of the case. Consequently, there is no basis in this record for any comparison of the resources of the parties in determining whether the means of the plaintiff, in all the circumstances, were adequate to justify requiring her to resort to those means or whether she ought to be permitted to resort to defendant's means.

■■■ The question put to the defendant regarding his resources was general and was competent and legally relevant to a discovery of his means for comparison with plaintiff's. Following the objection there was an abandonment of all such inquiry. Plaintiff argues that it ought to be held as a fact, due to defendant's objection and its sustention, that any comparison of her means with his means would have been unfavorable to him on this branch of the controversy and it ought to be ruled for plaintiff. We are familiar with the principle applying where a party suppresses evidence by entering an objection not legally tenable and gets it sustained and thereby precludes an inquiry of relevance. Our

courts have ruled that, in such an instance, the facts competently sought after by the question objected to can be taken as unfavorable to the objector and found favorably for the proponent of those facts. Derrington v. Southern Ry. Co., 328 Mo. 283, 40 S.W.2d 1069, 1072; State ex rel. St. Louis County Transit Co. v. Walsh, Mo.App., 327 S.W.2d 713; Kamoss v. Kansas City & W. B. Ry. Co., Mo.App., 202 S.W.2d 434; Hardwick v. Kansas City Gas Co., 355 Mo. 100, 195 S.W.2d 504, 166 A.L.R. 556. On this record, we do not think we ought to apply these rulings. The offer by the plaintiff was general. The objection made was specific: that the evidence offered was irrelevant to defendant's ability to pay which he had admitted already. That was a sound objection. The court's ruling excluding the evidence, if offered for that purpose, was also sound. Counsel for plaintiff did not point out that the evidence was relevant to a comparison of the resources of the parties or make any offer indicating it was offered for that purpose. Nor did this relevance seem to occur to the court. Counsel acceded to the ruling and abandoned all further inquiry into defendant's resources. Reading this record, we think it is clear that everyone, the court and counsel for both parties, in concentration on another branch of the case, and in the stress of the trial, all overlooked the relevance of defendant's resources for comparison with plaintiff's and all turned at once to the pursuit of other aspects of the controversy. Absent any evidence in this record of notice to the court that plaintiff was offering the evidence for comparative purposes, and believing that the record shows all acted in good faith, and only through oversight, we do not believe that we ought to take the view that defendant's specific objection sought to preclude any proper inquiry. Therefore we are not authorized to assume that the evidence of defendant's resources would have been unfavorable to him and that it should have been found that a comparison of his resources with plaintiff's would demonstrate that as a fact. Accordingly, we must hold that the rec-

ord made, for lack of any basis for comparison of resources, did not authorize the allowance of attorney's fees and that it was an abuse of the trial court's discretion to make an allowance.

We believe it is incumbent upon the parties and their attorneys (unless there can be some voluntary disposition) to make a further effort to discover and present in the trial court at a further hearing facts constituting a legal basis for a comparison of the means of the parties. Simon v. Simon, Mo.Sup., 248 S.W.2d 560; Jeans v. Jeans, Mo.App., 300 S.W.2d 870. We think that such a hearing will shed light upon the question involved and furnish accurate factual basis for whatever order the trial court may make.

Therefore, the judgment for attorney's fees is reversed and the cause is remanded for such additional action on this branch of the case as the court and the parties may desire to take.

ANDERSON, Acting P. J., and RUDDY, J., concur.