**James RUTLADER, Respondent,**

v.

**Eleanor RUTLADER, Appellant.**

**No. 24013.**

Kansas City Court of Appeals.

Missouri.

Feb. 6, 1967.

---

1. See Norris v. Bristow, 361 Mo. 691, 236 S.W.2d 316, 26 A.L.R.2d 366; 3 Mo.Dig., Appeal and Error, ☞1097(1).

Edgar J. Keating, Kansas City, for appellant.

J. K. Owens, Kansas City, for respondent.

BLAIR, Judge.

In this suit for divorce, the trial court dismissed the husband's petition. It granted the wife a divorce on her cross bill, the custody of their two children and $17.50 per week for the maintenance of each child. It denied her attorney's fees and alimony and she appeals from this last action of the court. The court undertook also to grant her another award by including in the decree this provision: "It is further ordered and adjudged by the court that the defendant (wife) be and she is hereby given one-half of the property when it is sold, together with $270.00 which is her part of the rental until sold." The transcript justifies the assumption that the "property" to which the decree referred was the home in which the husband and wife lived before the separation, but, from the transcript, we cannot determine how title to this home was held, whether by the entireties or in some other way. Nevertheless, neither the husband nor the wife asks on this appeal that the provision of the decree undertaking to grant the wife one-half of this property when it is sold, together with $270.00, her part of the rental, be set aside or altered in any manner. The only points relied on in the wife's brief, and she is the appellant, are verbatim: "1. The court erred in refusing to grant any alimony" and "2. The court erred in refusing to grant defendant any attorney's fees." The Supreme Court has held that, even if the decree affected title to real estate, V.A.M.S., Constitution, Art. V, Sec. 3, it was without jurisdiction because the husband did not appeal and, therefore, consented to this disposition of the "property" and because this appeal by the wife presents no "live" issue calling for an adjudication of title and asks no decree which would affect or operate on title to this real estate. It transferred the cause to this court. Rutlader v. Rutlader, Mo., 407 S. W.2d 906. Thus our jurisdiction of this appeal has been established by the Supreme Court and we now proceed to its exercise.

Mrs. Rutlader's cross bill charged general indignities. The trial court dismissed Mr. Rutlader's petition and granted Mrs. Rutlader a divorce on her cross bill, as we have said. On this appeal, as we have indicated, its action in granting her a divorce is not questioned by Mr. Rutlader, although we may say that we have reviewed the record on the law and the evidence and would reach the same result if this action of the trial court were questioned. Civil Rule 73.01(d), V.A.M.R.; 11 Mo. Digest, Divorce, Its action in granting Mrs. Rutlader custody of the two children and $17.50 per week for the support of each child or $1,820.00 per year for the support of both is also unquestioned. The only question confronting us is whether the trial court abused its discretion by failing to grant Mrs. Rutlader alimony and an attorney's fee.

Allowances of alimony and an attorney's fee to a wife who is granted a divorce are not mandatory, but an application for such an allowance is an appeal to the sound discretion of the court, Ridgley v. Ridgley, Mo.App., 370 S.W.2d 679; Kaye v. Kaye, Mo.App., 327 S.W.2d 496; 11 Mo.Digest, Divorce, and that discretion must be exercised always in accordance with established principles and in view of the circumstances of each particular case. Simmons v. Simmons, Mo. App., 280 S.W.2d 877; Ridgley v. Ridgley, Mo.App., 370 S.W.2d 679; Knebel v. Knebel, Mo.App., 189 S.W.2d 464. The exercise of that discretion is subject, of course, to review and it will be corrected on appeal if it has been manifestly abused. Gross v. Gross, Mo.App., 319 S.W.2d 880; Kaye v. Kaye, Mo.App., 327 S.W.2d 496; Richardson v. Richardson, Mo.App., 288 S.W.2d 20; 11 Mo.Digest, Divorce, 

Attorney's fees fall in the broad category of "alimony", Hogsett v. Hogsett, Mo.App., 409 S.W.2d 232; Noll v. Noll, Mo.App., 286 S.W.2d 58; Howard v. Howard, Mo.App., 300 S.W.2d 853; Bovard v. Bovard, 233 Mo.App. 1019, 128 S.W.2d 274, and awards both of alimony and attorney's fees are governed by the same established principles. Ridgley v. Ridgley, Mo.App., 370 S.W.2d 679.

Concerning attorney's fees, a husband will not be permitted to prosecute or defend a divorce proceeding without affording his wife the means to defray her expenses of litigation, if she lacks adequate means of her own. Orrick v. Orrick, Mo. App., 269 S.W.2d 153; 11 Mo.Digest, Divorce, Of course, if she does have adequate means in her own right to defray her expenses in litigating a divorce proceeding, she cannot require her husband to pay those expenses, Lehr v. Lehr, Mo. App., 264 S.W.2d 37; McKenzie v. McKenzie, Mo.App., 306 S.W.2d 588, but this does not mean that she must be in a state of destitution before she is entitled to an allowance for attorney's fees. Graves v. Wooden, Mo.App., 291 S.W.2d 665; Price v. Price,

Mo.App., 281 S.W.2d 307. In "Determining whether or not a wife is possessed individually of adequate means, to which she may reasonably be required to resort for payment of her attorney's fees, in instances where the wife has some means, courts compare the means of the wife with those of the husband to ascertain whether it is reasonable to require her to look to her own means or to permit her to look to her husband's means. * * * This is equitable for a wife of little means oftentimes should have the right to look to a husband of larger means for the payment of her attorney's fees, if the disparity in means is great enough." Mathews v. Mathews, Mo.App., 337 S.W.2d 529; Gregg v. Gregg, Mo.App., 272 S.W.2d 855; Wonneman v. Wonneman, Mo.App., 305 S.W.2d 82; McKenzie v. McKenzie, Mo.App., 306 S.W.2d 588; Adkins v. Adkins, Mo.App., 325 S.W.2d 364.

Concerning alimony, it is no answer that the husband, if the wife deserves alimony, temporarily is unable to pay, if his past earning capacity and his reasonable prospects for paying in the future do not convince that his present inability will remain static and if there is a prospect that he will be able to pay what he ought to pay sometime in the future. Lampman v. Lampman, Mo.App., 367 S.W.2d 28. In such circumstances, the court is authorized to allow her at least nominal alimony, to be increased in the future if the husband's financial status improves, for if no alimony is allowed when the divorce is granted, none can ever be allowed after the decree becomes final, Lampman v. Lampman, Mo.App., 367 S.W.2d 28; Herbert v. Herbert, Mo. App., 221 Mo.App. 201, 299 S.W. 840; 11 Mo.Digest, Divorce, and this would be a plain injustice. Such a ruling would be an injustice not alone to the wife but to the state as well. For a suit for divorce is not a mere controversy between the parties, but the state, although not named in the pleadings, occupies the position of a third party. McMakin v. McMakin, 68 Mo.App. 57; Milster v. Milster, 200 Mo.App. 603, 209 S.W. 620. The state has

a right to its day in court when a suit for divorce and its incidents are tried and adjudged, Bishop v. Bishop, Mo.App., 162 S.W.2d 332, and courts should, in a large degree, it is said, insure that its interests are protected, Milster v. Milster, 200 Mo. App. 603, 209 S.W. 620, for society has an interest in every marriage, Wagner v. Shelly, Mo.App., 235 S.W.2d 414; 11 Mo. Digest, Divorce, ▆ and a right to avoid, if possible, a divorcement of the wife, which results in her becoming a charge on the state, if she is the innocent and injured party, and in need of support from a former husband who is able to provide it.

▆ Determining whether alimony should be awarded, and if it is awarded, in what amount, various factors almost invariably enter into consideration, such as the financial status of the parties; the extent of their individual estates; their incomes; their obligations; their necessities; the contributions of each to the property accumulated during the marriage; the likely future prospects of each; their ages; their health; their ability to engage in gainful occupations; their children and the disposition made of their custody; the duration of the marriage; and whether it was one of affection or convenience; and the conduct of the parties which caused the divorce, and the comparative responsibility of each for it. Simon v. Simon, Mo., 248 S.W.2d 560; Carr v. Carr, Mo., 232 S.W.2d 488; Knebel v. Knebel, Mo.App., 189 S.W.2d 464. What we say regarding the principles governing an award of alimony is likewise applicable to an allowance of an attorney's fee, for, as we have observed, the same considerations govern the award of both. Simon v. Simon, Mo., 248 S.W.2d 560; Arnold v. Arnold, Mo., 222 S.W. 996; Graves v. Wooden, Mo.App., 291 S.W.2d 665. These general principles ought to bring this controversy into perspective after we recite the relevant facts.

We owe it to the attorneys who present this case in this court to notice that the record was made by different attorneys in the trial court.

The parties were married on June 28, 1953, and separated on June 1, 1961. This was the first marriage for both. After the marriage, Mrs. Rutlader worked until the first child was born on July 9, 1954. The second child was born on August 6, 1955. At the time of the trial, the children were about 8 and 7 years old respectively. Prior to the marriage Mrs. Rutlader worked for the federal government and her "take-home pay" was $208.00 per month and it continued in that amount after the marriage until the first child was born. After the marriage, she gave all of her take-home pay to her husband during the thirteen months before the arrival of the first child. At the time of the trial she had no income from any source except a temporary allowance previously made by the court for the support of the children. This income ended, of course, when the trial was concluded and the court substituted for it the allowance for the children we have recited it made. Both children were attending school and the oldest child suffered from a chronic and permanent affliction of the vocal chords requiring treatment and Mrs. Rutlader's constant attention. There was no evidence that she could leave the children and obtain employment. Indeed, the evidence was to the contrary. During the marriage a home was purchased. Although there is some controversy in the record, the evidence is clear that her husband's mother gave her $3,000.00 in government bonds for a partial payment on the home and, from this record, we easily see why the bonds were entrusted to Mrs. Rutlader rather than her husband who appears to have been rather irresponsible. At the trial Mr. Rutlader testified that the bonds were given to him, and not to his wife and that her testimony on this subject was false. Viewing the whole record and the suspicious and evasive character of his testimony, we believe that his wife's testimony on this subject is true. The price paid for the home was $14,750.00 and at the time of the trial the mortgage

had been reduced to $2,000.00. While the court ordered that Mrs. Rutlader receive one-half of the money obtained from the sale of the property when it was sold, this record does not show that she ever did, and since the order of the court was void, Ecton v. Tomlinson, 278 Mo. 282, 212 S.W. 865; Watts v. Watts, 304 Mo. 361, 263 S.W. 421, we do not feel safe in assuming that she received anything. This case was tried on July 15, 1963. It is admitted in the briefs of the parties that Mr. Rutlader had at least a net income after state and federal taxes of $5,539.83 in 1960 and $5,443.92 in 1961. Mrs. Rutlader testified that her husband told her that his actual monthly income was $1,000.00.

Mrs. Rutlader testified that she was entitled to the sum of $1,800.00 as government retirement at the time she ceased working and she "drew out" this sum and gave it to her husband to make a further partial payment on the home that was purchased. There is no contradiction of her testimony on this subject. The record shows that Mr. Rutlader had title to various parcels of real estate in his name and that she went with him from time to time to collect the rents. He testified that these properties were placed by others in his name for convenience only and that he owned none of them. She testified that he had never told her that he did not own these properties until the day of the trial. His testimony on this branch of the controversy arouses not belief but deep suspicion.

Mrs. Rutlader was an irritating witness because of her avidity to relate her grievances when questions were put dealing with an entirely different subject. Emotionally upset, as the record shows, it was not unnatural for her to wander into irrelevancies. We do not think she should be penalized for this conduct, arising as we believe it did from the strange atmosphere of the court room and her personality which was not malicious and for which she was not responsible. Immediately preceding the trial there was a pre-trial confer-ence. The trial court before hearing any evidence announced to her that he intended to give her a divorce, the custody of the two children and $17.50 per week for the support of each child. She asked the court whether she would be granted alimony. The court repeated its previous statement of what it intended to do. She then asked for a trial and said that she had witnesses to substantiate her. The court told her he would not hear the witnesses. Actually, he only heard Mrs. Rutlader and one other witness who testified on an entirely different subject. Finally, after much insistence on her part, the court did tell her that he would give her a trial and if she was dissatisfied with the allowances he had announced in advance he intended to make, she could appeal.

In all deference to the able and honored trial judge, we think he did not accord her a fair trial on the question of alimony and an attorney's fee for it is apparent from the record that he had decided the case in advance. We believe the reason was that she was such an irritating litigant and he lost his sense of forbearance and impartiality as sometimes happens, although very rarely. Actually he heard her case and awarded her at the end of the trial precisely what he had told her in advance was all that he intended to award. A judge presiding at a trial should at all times maintain an impartial attitude and a status of neutrality between contending parties. He should not conclude in advance of the end of the trial what he will do at that time. For this is to adjudge the controversy without hearing the evidence that ought to resolve it. He should exercise the highest degree of patience and forbearance toward the parties, consistent with decorum and an orderly trial, however irritating their emotional upset or personality may be, and any different attitude on his part is incompatible with that fair and impartial trial which courts require as due process. Duncan v. Pinkston, Mo., 340 S.W.2d 753; Harms v. Simkin, Mo. App., 322 S.W.2d 930; 88 C.J.S. Trial §

51; 27 Mo.Digest, Trial, ██ For this reason alone the trial court's denial of alimony and an attorney's fee cannot stand.

Mr. Rutlader seeks to avoid the allowance of alimony and an attorney's fee on the technical ground that there were no allegations in the body of the petition, only in its prayer, that she desired such awards. She testified at length at the trial that she was without resources and penniless, and she did so without any objection. Sufficient it is to say that the body of her pleading will be treated as adequately amended by force of Civil Rule 55.54. It was admitted by Mr. Rutlader that he was employed by the Jackson County Coroner's Office and the Good Luck Furniture Company. From the coroner's office he received $224.10 per month and from the Good Luck Furniture Company $53.27 per week. In his answering brief on this appeal, he states that he has since been discharged by the Jackson County Coroner's Office "which is not shown by the record in this case." We could take this statement as truth since Mrs. Rutlader filed no reply brief denying it, 3 Mo.Digest, Appeal & Error, ██ but we do not choose to do so due to the suspicion that Mr. Rutlader's whole testimony raises in our minds.

Mr. Rutlader asserts in his brief that "the entire record in this case shows beyond any doubt that the Appellant in this case was a woman of high and ungovernable temper; that such a person, from the record, should not be entitled to any relief at all; and the giving of the custody of the children to the Appellant, and child support at this time is giving her much more than she would be actually entitled to under the evidence." He relates one instance of a burst of temper by Mrs. Rutlader which the record shows resulted from provocation on his part. There is no merit in this argument and furthermore we do not agree with his general statement when we compare it with the record. Besides, a wife can be an innocent and injured party unless she has been guilty of conduct constituting grounds for divorce and there is no requirement that she demonstrate in the face of provocation the patience of Job or an angelic perfection. Ridgley v. Ridgley, Mo.App., 370 S.W.2d 679; 11 Mo. Digest, Divorce, ██ Every one of common intelligence knows that people who live together in marriage sometimes arrive at differences and are guilty of bursts of temper which are forgiven in almost no time at all.

██ We must try the issues presented to us on the record de novo and it is our duty to review the evidence and the law and to enter such judgment as the trial court should have rendered, Civil Rule 73.01(d); Kinder v. Kinder, Mo.App., 267 S.W.2d 356; Richardson v. Richardson, Mo.App., 270 S.W.2d 68; 11 Mo.Digest, Divorce, ██ (6), if the record enables us to do so.

As we have observed, the divorcement of a wife who is the innocent and injured party and in need of awards of alimony and attorney's fees from her husband who is able to pay them, should be accompanied by such awards. But can we determine on this record what awards should be made to Mrs. Rutlader? A study of this record has led us to conclude that any award, beyond nominal alimony and nominal attorney's fees would be the merest leap in the dark.

Far too much is lacking in this record for us to make an intelligent award of alimony or an attorney's fee. We believe that further investigation in the trial court can develop the facts essential to a decision which were not developed in the trial court. Counsel representing parties in suits for divorce in trial courts ought to recognize their responsibility to the court, their clients, the state and themselves to develop all relevant facts fully and not leave it to the trial or appellate courts to grope about in a dark field where perfunctory trial methods are responsible for the absence of light.

On this record we are convinced that Mrs. Rutlader is entitled to alimony and to an attorney's fee in *some* amount, and we so hold, but the record before·us does not enable us to say in what amount. We will never stand aside from our duty to decide when the facts warranting a decision are before us, but they are not here. Looking backward to the standards that must be taken into account before alimony or an attorney's fee may be allowed to a wife, there is nothing to show that Mrs. Rutlader ever received one-half of the property when it was sold, if it was ever sold, or the price for which it was sold. We know it had not been appraised at the time of the trial and she testified that Mr. Rutlader had permitted it to "run down". We know she had no income at all. We do not know what obligations she may have and the record is too scanty for us to determine her necessities, although we know they must exist. We do know that one daughter must be given speech therapy treatments three times a week at $4.00 a treatment, and occasionally, must be treated by another doctor who charges $15.00 for each visit. We recognize that the support for the children has been fixed by the trial court and from it there is no appeal. Yet we know that it is necessary for Mrs. Rutlader to travel from Kansas City, Missouri to Kansas University Medical Center at her own expense to obtain treatment for the afflicted child. We know that at the time of the trial there seemed to be no prospect that she would be able to leave the children and to go to work. We know that she made substantial contributions during the marriage to the purchase of the home. We do not know the probable future prospects of Mr. Rutlader. We do not know the respective ages or the condition of health of the parties. We do not know whether Mr. Rutlader can obtain employment to supplant that which he says in his brief he lost at the coroner's office. We cannot tell from this record with any degree of satisfaction whether his statement to Mrs. Rutlader that his income was $1,-000.00 a month was true or false, for the record on this subject is far too sketchy. We do know that Mrs. Rutlader cannot live on nothing at all.

Obviously, the issues relating to alimony and an attorney's fee have been insufficiently developed. Reversal and remand is a customary procedure in divorce cases where the evidence on a particular issue has not been developed at the trial. Niedergerke v. Niedergerke, Mo.App., 271 S.W.2d 204; Ridgley v. Ridgley, Mo.App., 370 S.W.2d 679; Carrow v. Carrow, Mo. App., 294 S.W.2d 595; Mayor v. Mayor, Mo.App., 351 S.W.2d 810; Jeans v. Jeans, Mo.App., 300 S.W.2d 870; Simon v. Simon, Mo., 248 S.W.2d 560. We believe it is incumbent upon the parties and their attorneys, unless they can make some voluntary disposition, to make a further effort to discover and present in the trial court, at a further hearing, facts constituting an accurate and legal basis for determining the amount of alimony and an attorney's fee due Mrs. Rutlader. We think that such a hearing, diligently pursued, will shed light upon these questions and furnish a basis which will enable the trial court to make some proper award. Mathews v. Mathews, Mo.App., 337 S.W.2d 529.

The portion of the decree denying Mrs. Rutlader an award for alimony and an attorney's fee is reversed and this part of the cause is remanded for such additional action on this branch of the case as the court and the parties may determine to take.

All concur.